WARD ET AL., APPELLEES, *v.*
WASHINGTON DISTRIBUTORS, INC., ET AL., APPELLANTS.
[Cite as Ward v. Washington Distributors (1980),
67 Ohio App. 2d 49.]

(No. L-79-161—Decided February 1, 1980.)

*Messrs. Shumaker, Loop & Kendrick, Mr. Robert B. Gosline* and *Mr. David W. Wicklund,* for appellees.
*Messrs. Jones, Day, Reavis & Pogue, Mr. Raymond J.*

*Durn, Mr. James C. Hagy, Messrs. Eastman, Stichter, Smith & Bergman* and *Mr. Henry N. Heuerman,* for appellants.

BROWN, J.  This matter was initiated by a complaint filed by plaintiffs-appellees, Jane B. Ward and The Ohio Citizens Trust Company, in the Toledo Municipal Court. The complaint alleged that defendants-appellants, Washington Distributors, Inc., and Gray Drug Stores, Inc., unlawfully remained in possession of premises located at 1207 North Reynolds Road in Toledo, Ohio, after their lease had expired. The case proceeded to trial and on May 7, 1979, the court entered the following judgment:

"This cause came on for hearing with both parties represented by counsel, the Court finds the facts in plaintiffs' complaint are true and that the prayer of the complaint shall be granted. The Court further finds that the facts alleged in the first defense are inadequate for equitable relief. It is therefore ordered that the writ of eviction shall be issued."

Washington Distributors, Inc., and Gray Drug Stores, Inc. (hereinafter the latter is referred to as Gray Drug), have appealed the matter to this court.

The facts in this case are substantially undisputed. On December 10, 1960, Edward Bayer leased the property located at 1207 North Reynolds Road in Toledo, Ohio (hereinafter referred to as the Reynolds Road property or store), to Bargain City of Toledo, Inc. (hereinafter referred to as Bargain City). Bargain City took possession of the Reynolds Road property in 1961 under a lease that was to expire 12 years after the first day of the month immediately following the tenth day after completion of certain improvements to the premises.

Washington Distributors became the lessee to the Reynolds Road property by succeeding to the interests of Bargain City. Gray Drug is the parent corporation of Washington Distributors, which is solely owned by Gray Drug. Gray Drug, through its property department, acts as agent for its subsidiary, Washington Distributors, in all lease matters.

The lease contained a renewal clause which stated that Bargain City had the right to renew the lease for two additional five-year periods, provided that Bargain City supplied Mr. Bayer, his devisees, heirs or assigns, with notice of its in-

tention to renew the lease at least 30 days before the end of the preceding term.

Edward Bayer died on May 30, 1964, and plaintiffs succeeded to his interest in the Reynolds Road property.

On June 10, 1966, plaintiffs entered into a lease agreement with Seaway Food Town, Inc. (hereinafter referred to as Seaway), under which Seaway leased the property adjacent to the Reynolds Road premises. The lease was to run for a period of 12 years after the first day of the month succeeding the month in which possession of the leased building was given to Seaway.

Plaintiffs also supplemented their lease agreement with Bargain City on June 10, 1966. The supplement provided that the term of the original December 10, 1960, lease was to be extended for a period of 12 years from and after the first day of the month in which possession of the leased building was given to Seaway. The supplement provided the lessees with the right to renew their lease for two five-year periods after the termination of the 12-year term set forth in the supplement.

Seaway was given possession of its leased building in November of 1966, and the extended 12-year lease term contained in the Bargain City supplement began to run no later than December 1, 1966.[1]

On June 16, 1967, plaintiffs wrote to Gray Drug to remind Gray Drug that the commencement date of the term of the supplement to the lease was December 1, 1966. Gray Drug received this letter; but, due to an apparent clerical error, it was not placed in the proper lease file for the Reynolds Road store, but was placed in a mass of documents in the corporate acquisition file. As a result of this error, Mr. Berwitt of Gray Drug prepared a lease digest sheet for the Reynolds Road store without any reference to the letter of June 16, 1967.

Gray Drug was not alerted that it was misreading the terms of the lease, by relying on the Berwitt-prepared lease digest; and, it failed to file a timely renewal notice with plaintiffs. The lease digest stated that the 12-year lease expired on March 1, 1979. Gray Drug believed that the notice to renew the lease was not due until January 30, 1979, when it was in fact due on November 1, 1978.

---

[1] In 1967, Gray Drug acquired Bargain City. In 1973, Bargain City was merged into Washington Distributors.

On November 22, 1978, The Ohio Citizens Trust Company (hereinafter referred to as Ohio Citizens) wrote to Gray Drug reminding it that its lease expired on November 30, 1978. Gray Drug received the letter on November 27, 1978. On December 1, 1978, one day after the lease expired, and 30 days after its time to renew had passed, Gray Drug, through Mr. Jesina, phoned Ohio Citizens and attempted to renew its lease. The phone conversation was confirmed the same day, by a letter indicating that defendants were exercising the option to renew.

The fundamental questions presented in this case are whether equity will relieve a tenant from a forfeiture of a valuable right to renew a lease term, when the option to renew is exercised after the specified renewal date, and whether the record below establishes an appropriate case for such equitable relief. Our answer is in the affirmative, to both questions.

The defendants' assignments of error are set forth below.[2]

In their joint answer, defendants denied that Washington Distributors failed to effectively renew the lease term and asserted facts to establish an equitable defense to the action. *Inter alia,* defendants alleged that termination of the lease would cause defendants to lose $72,589 of unamortized leasehold improvements and fixtures if they were deprived of their right of renewal.[3]

---

[2] Defendants' assignments of error are as follows:

"I. Whether the Municipial Court erred in finding as a matter of law that even if all of the facts as alleged by the Tenant were true, Tenant would not be entitled to equitable relief from a forfeiture of a valuable right to renew a lease with Landlord.

"II. In the alternative, if this Court should find that the trial court recognized the availability of such equitable relief in Ohio, whether the judgment of the trial court is against the manifest weight of the evidence and contrary to law."

[3] The joint answer of the defendants, in pertinent part, reads as follows:

"For their first defense they***aver that the supplement was ambiguous on its face with respect to the date on which the term commenced.

"They further aver that they gave notice to plaintiffs of their intention to exercise their right to renewal in good faith at a time which they honestly regarded as sufficient to satisfy all conditions imposed upon them for such notice and exercise by both the said lease and said supplement, and that their said notice was received in fact by plaintiff without any delay material or significant to plaintiffs or to their rights under the said lease or its supplement. They further aver that plaintiffs had not then changed their position in any material or significant manner as a result of any such immaterial or insignificant delay.

"They further aver that plaintiffs will suffer no harm from the enforcement of the renewal term held of right by defendants, while defendants will suffer substantial injustice and economic harm due to both the loss of revenues from retail operations in

The evidence adduced at the trial clearly and sufficiently proved this defense. As previously indicated, the trial court treated the facts asserting this equitable defense as "inadequate for equitable relief."

The trial court held, in substance, that a Municipal Court had no power to order the equitable relief sought by defendants through their alleged affirmative defense. This holding was incorrect because R. C. 1901.18(C) empowers the Municipal Court "***to determine, preserve, and enforce all rights, legal and equitable, involved therein,***and to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties thereto***[.]"

Plaintiffs have argued that defendants should be denied equitable relief since they failed to renew their lease in accordance with the provisions of the lease. Plaintiffs do concede, however, that the delay in renewing the lease was caused by an honest, good-faith mistake, to wit, the misreading of the lease and the misfiling of the landlord's June 16, 1967, letter. The well-settled rule is that unless the delay in renewing is so great as to be inexcusable, a failure to renew within the specified time will not preclude equitable relief. See *Jones* v. *Gianferante* (1953), 305 N.Y. 135, 111 N.E. 2d 419; *Xanthakey* v. *Hayes* (1928), 107 Conn. 459, 140 A. 808.

A careful review of the record and a weighing of the equities between the parties, based upon the evidence adduced, require application of well-settled principles of equity to which we will allude. On that basis, we are compelled to reverse the judgment of the trial court and to enter judgment for the defendants on the affirmative defense.

Equity will relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner, required as a condition precedent to the renewal of a lease, where such failure results from accident, fraud, surprise or honest mistake, and has not prejudiced the lessor; and, there are other special circumstances which have been held to warrant a court of equity to grant relief from the consequences of the lessee's failure to notify the lessor within the stipulated

---

the said premises and from the loss of some $72,589.00 of unamortized leasehold improvements and fixtures therein as of December 1, 1978, if they are deprived of their right to such a renewal term."

time or in the specific form or manner prescribed. See *Barr Hotel Co.* v. *Lloyd MacKeown Buick Co.* (1957), 104 Ohio App. 69, 73-74; *Kuhn* v. *Griffin* (1964), 3 Ohio App. 2d 195; *Rea* v. *Helsley* (1949), 86 Ohio App. 114; *Sorrels* v. *Pugliesi* (1953), 67 Ohio Law Abs. 193; *Benetti* v. *Kishner* (1977), 93 Nev. 1, 558 P. 2d 537; *Dugan* v. *Haige* (Fla. 1951), 54 So. 2d 201; *American Houses, Inc.,* v. *Schneider* (C.A. 3, 1954), 211 F. 2d 881; *Application of Topp* (N.Y. Supreme Ct. 1948), 81 N.Y. Supp. 2d 344, 346.

Equity will not tolerate a forfeiture where the lessees' delay was attributable to an erroneous recollection of the number of days in advance that the notice to renew was required to be presented, or to an honest mistake, where there was no willful or deliberate act or omission of the lessees, the lessees having lost their copy of the lease. See *Galvin* v. *Simons* (1942), 128 Conn. 616, 25 A. 2d 64. See, also, *Geo. W. Millar & Co., Inc.,* v. *Wolf Sales & Service Corp.* (1971), 65 N.Y. Misc. 2d 585, 318 N.Y. Supp. 2d 24; *Sy Jack Realty Co.* v. *Pergament Syosset Corp.* (1971), 27 N.Y. 2d 449, 318 N.Y. Supp. 2d 720. The facts in these cited cases are analogous to the facts in the case at bar.

Even when there is an absence of an honest mistake by the lessee, where the lessee has made valuable improvements to the leased premises, the lessee should not be denied equitable relief from his own neglect or inadvertence if a forfeiture of such improvements would result—provided, there is no prejudice to the landlord. See *Barr Hotel Co.* v. *Lloyd MacKeown Buick Co., supra; J.N.A. Realty Corp.* v. *Cross Bay Chelsea, Inc.* (1977), 42 N.Y. 2d 392, 397-398, 397 N.Y. Supp. 2d 958, 961; *Xanthakey* v. *Hayes, supra; F. B. Fountain Co.* v. *Stein* (Conn. 1922), 118 A. 47; *Geo. W. Millar & Co., Inc.,* v. *Wolf Sales & Service Corp., supra.*

Since an option to renew a lease is plainly of great value to commercial tenants, especially in an age of inflation, and is given in exchange for valuable consideration, such a valuable benefit should be protected by equity against a forfeiture where the lessee has faithfully met the rents and all other substantial requirements of the lease through the entire term. *Geo. W. Millar & Co., Inc.,* v. *Wolf Sales & Service Corp., supra.* It is especially applicable where the lessee has made substantial leasehold improvements, as in the case at bar.

Plaintiffs find support for their argument in the following language from *Ahmed* v. *Scott* (1979), 65 Ohio App. 2d 271, 276-277, which was decided by this court:

"* * * Equity will not relieve a lessee of the consequences of his failure to give written notice of renewal of the lease within the time required by the provisions of the lease when the failure resulted from the negligence of the lessee unaccompanied by fraud, mistake, accident or surprise and unaffected by the conduct of the lessor.* * *"

This language can only be properly considered in light of the operable facts in *Ahmed*. *Ahmed* involved a written option to purchase (although options to renew were also discussed), while the present case involves a written lease with two five-year options to renew.

Other pertinent facts, which make *Ahmed, supra,* distinguishable from the instant cause, are found on pages 277 to 278 of that opinion and read as follows:

"The record in the case at bar reveals that the parties recognized that the situation of the new holdover tenancy after April 1, 1975, was far different from the original eight-year term. A new lease was offered to plaintiffs after April 1, 1975, which did not contain an option for renewal of the lease or for purchase of the leased premises. For that reason, plaintiffs did receive notice that the terms and conditions of the original lease had been modified. By holding over, plaintiffs impliedly accepted these modifications, including the loss of the option to purchase the leased premises. See *Young Men's Christian Assn.* v. *Harbeson*** where the court held that a lessee's actions, in holding over and paying rent while a new lease was being negotiated—where the lessor indicated that the purchase price contained in the original option to purchase the real estate would have to be renegotiated—amounted to an implied acceptance by the holdover lessee to a modification of the expired lease so that the lessee, under the new relationship, was a holdover tenant without an option to purchase at the price stated in the original lease.* * *"

Given these facts, the proposition that *Ahmed* v. *Scott, supra,* supports plaintiffs' point of view is simply too extravagant to be maintained.

Accordingly, both assignments of error are well taken.

The judgment of the Toledo Municipal Court is reversed.

Coming now to enter the judgment which the Toledo Municipal Court should have rendered, judgment is hereby rendered in favor of the defendants against the plaintiffs and the complaint is dismissed. It is further ordered and decreed that, in accordance with the equitable affirmative defense established by defendants, defendants have, by their actions and by their written notice to plaintiffs (the letter dated December 1, 1978), exercised their option to renew the lease for an additional term of five years commencing on December 1, 1978, and that such lease is effective for a renewal term of five years from December 1, 1978, to December 1, 1983.

*Judgment accordingly.*

CONNORS and WILEY, JJ., concur.

WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

WILEY, J., concurring in the judgment. I concur in the opinion of my learned colleague, Judge Brown, that the fundamental questions presented are whether equity will relieve a tenant from a forfeiture of a valuable right to renew a lease term, when the option to renew is exercised after the specified renewal date, and whether the record below establishes an appropriate case for such equitable relief. I agree that the answer to both questions is in the affirmative. I further concur in the statements made by Judge Brown in distinguishing *Ahmed* v. *Scott* (1979), 65 Ohio App. 2d 271, from the case herein.

Under the facts and circumstances herein, including the honest mistake, the failure to give notice, the absence of prejudice to the landlord, the short lapse of time involved and the improvements made by the lessees, the principles of law stated in Annotation 44 A.L.R. 2d 1359, 1366, 1369, Sections 4 and 5, and the cases cited therein, are applicable.