OPINION
Plaintiff-appellant, Joan Burns, appeals a decision of the Madison County Court of Common Pleas granting partial summary judgment in favor of defendant-appellee, Charles E. Norcott.
On January 24, 1996, appellant entered into a pasture lease agreement with appellee pursuant to which appellee agreed to lease to appellant approximately ten acres of land for the purpose of boarding appellant's eight horses. The pasture land is situated adjacent to appellee's residence located at 194 South Chester Street in West Jefferson, Ohio. At the time, appellant was living at appellee's home and desired to have her horses in close proximity where she could tend to them without the expense of boarding.[1] The annual rent due under the terms of the lease was $400, payable by March 1 of each year. The lease provides, in pertinent part, as follows:
 2. The initial term of this lease shall be from January 1, 1996 through December 31, 1996;
 4. Lessee shall have 20 successive options to renew this lease for one-year periods, provided Lessee gives Lessor written notice of her intent to renew the lease on or before December 1st of each year for the next succeeding year;
 5. Lessee is granted permission to construct a horse barn, fences, gates, install or improve a well, and other improvements associated with maintenance of horses on the premises;
 8. Lessee shall have a first option to purchase the leased premises (at the probate appraised value for the land only) from the estate of Lessor, which must be exercised by presentation to Lessor's legal representative a letter of intent to exercise the option within 120 days of the date of Lessor's death.
Following the execution of the lease, appellant acquired a zoning variance which allowed her to board the horses on the property and subsequently transported her horses to Ohio from Wisconsin. Appellant paid the first annual lease payment in the amount of $400 and recorded the pasture lease agreement. Appellant also began constructing a fence on the property.
In July 1996, appellant moved from appellee's home back to Wisconsin, taking her family and horses with her.[2] Appellant did not give written notice prior to December 1, 1996, as required under the lease, of her intention to renew the lease for another year. On December 31, 1996, appellant filed a complaint against appellee claiming breach of the personal service contract entered into by the parties on September 15, 1995, unjust enrichment, sexual harassment, breach of the pasture lease agreement, and intentional infliction of emotional distress. Appellee filed an answer and counterclaim, denying the allegations in appellant's complaint and asserting counterclaims for breach of contract, unjust enrichment, breach of fiduciary duty, coercion, and a declaratory judgment to quiet title to the property subject to the parties' pasture lease agreement. On February 25, 1997, appellant tendered the next annual lease payment in the amount of $400, which appellee refused to accept.
On May 9, 1997, appellee filed a motion for partial summary judgment with respect to the declaratory judgment action to quiet title to the pasture property. On July 14, 1997, the trial court granted appellee's motion for partial summary judgment, finding that the pasture lease agreement expired by its own terms due to appellant's failure to exercise the option to renew it "on or before December 31, 1996."[3] The trial court also found that appellant's failure to timely renew the lease extinguished the option to purchase the leased property. A judgment entry was filed on July 23, 1997. It is from this judgment that appellant now appeals, setting forth the following assignment of error:
 THE COMMON PLEAS COURT ERRED IN GRANTING APPELLEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
In her sole assignment of error, appellant contends that the trial court erred by granting partial summary judgment in favor of appellee. Appellant argues that genuine issues of material fact exist as to whether her failure to renew the pasture lease was due to an honest mistake and/or the bad faith harassment by appellee, whether the lease agreement along with its option to purchase the leased property remain in effect, and whether she surrendered the leased property to appellee.
Summary judgment is appropriate where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds construing the evidence in favor of the nonmoving party could reach but one conclusion which is adverse to the nonmoving party. Bostic v. Connor (1988), 37 Ohio St.3d 144, 146, quoting Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). When reviewing an entry of summary judgment, an appellate court applies the same standard used by the trial court and must examine all evidence properly presented to determine whether there is a genuine issue as to any material fact and whether reasonable minds can reach only one conclusion which is adverse to the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360; Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829.
The parties do not dispute the fact that appellant failed to provide written notice to appellee of her intent to renew the lease for another year in accordance with the terms of the lease. It is appellant's contention, however, that equitable principles excuse her from compliance with the renewal provisions of the lease. In support of her argument, appellant relies upon Ward v. Washington Distributors, Inc. (1980), 67 Ohio App.2d 49, which held that equity may relieve a lessee from forfeiture of an option to renew, where the lessee exercises the option after the renewal date. Id. at paragraph three of the syllabus. According to Ward:
 [e]quity will relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner, required as a condition precedent to the renewal of a lease, where such failure results from accident, fraud, surprise or honest mistake, and has not prejudiced the lessor * * *.
Id. at 53. The court went on to conclude that even in the absence of an honest mistake by the lessee, the lessee may be entitled to equitable relief "where the lessee has made valuable improvements to the leased premises," such improvements would be forfeited, and the lessor would not be prejudiced. Id. at 54.
Appellant argues that her failure to renew the lease in accordance with its terms was based upon an honest mistake on her part resulting from stress caused her by appellee's alleged sexual harassment.[4] Appellant contends that she suffered emotional distress as a result of sexual harassment inflicted by appellee during her stay at appellee's home. Because of the severe emotional distress appellant experienced, she contends in her brief that the renewal of the lease "slipped [her] mind." Appellant further contends that, even in the absence of an honest mistake, she is entitled to equitable relief because she "made numerous improvements to the leasehold property including t-post fencing, gates and electric fencing."
In a deposition, appellant testified that she began residing at appellee's home in May 1995. Appellant stated that she retrieved her horses from Wisconsin in February 1996 and boarded them in Ohio at Morning Star Morgan Farm while she was preparing the pasture for them. Appellant stated that she purchased the necessary supplies and her son, Michael, began constructing a fence on the leased premises in May 1996. According to appellant, Michael installed fencing on the property between May and July 1996, but "[h]e hasn't completed it." Appellant stated that she was able to bring some of her horses to the pasture, but the others remained at Morning Star Morgan Farm until she left Ohio in July 1996.
Appellant testified that she had plans to build a barn on the property but she never hired anyone to construct it. Appellant also stated that the pasture land required a waterline because a well was not feasible, but she never took any steps toward the installation of a waterline because the boundaries were undetermined.
Appellant testified that she moved from appellee's home back to Wisconsin in July 1996 and that she transported her horses with her. Appellant testified that she did not give written notice of her intent to renew the lease before December 1, 1996, as required by the express terms of the lease. Appellant stated that she possessed a copy of the lease since it was executed but she "did not realize that [the renewal] clause was in there until [she] was reading it in January." Appellant stated that on February 25, 1997, she tendered a check to appellee in the amount of $400 representing the annual rental payment due under the lease. Appellant stated that she has not used the pasture land in any way since she left Ohio in July 1996. Appellant testified that after she left appellee's home and was away from that setting, the mental stress and ulcer condition she had experienced subsided.
After carefully reviewing the record, we find that the language employed in the pasture lease agreement regarding the notice of intent to renew is clear and unambiguous. The express terms of the lease agreement provide that in order to renew the lease term for another year, written notice must be given to appellee by December 1, 1997. Because appellant failed to provide written notice of her intent to renew the lease term for another year, the pasture lease expired. The option to purchase the leased pasture land expired as well upon expiration of the lease. Ahmed v. Scott (1979), 65 Ohio App.2d 271, 277; Barnes v. Schaeffer (June 14, 1996), Portage App. No. 95-P-0135, unreported.
Furthermore, we cannot conclude that appellant is entitled to equitable relief given the circumstances of this case. Even though she had a copy of the lease in her possession, appellant did not send written notice to appellee of her intent to renew the lease by December 1, 1996, as required by the lease. Once she realized the renewal provision was in the lease in January 1997, appellant still did not attempt to send written notice to appellee evidencing her intent to renew the lease. In addition, appellant removed herself from appellee's residence in July 1996 and therefore was not subject to the alleged sexual harassment, which she claims caused her to suffer stress and emotional distress, for at least four months prior to the time when the written renewal notice was due.
In addition, the record does not contain sufficient evidence that appellant made substantial improvements to the property which would justify equitable relief. Although the record indicates that some fencing was constructed on the property, appellant testified that the fencing was never completed, waterlines were never installed, and a barn was never built.[5]
Since no genuine issue of fact remains, the trial court was justified in entering summary judgment in favor of appellee. See Bostic, 37 Ohio St.3d at 146. Appellant's sole assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] Appellant and her family resided in Hayward, Wisconsin. In May 1995 appellant and her family traveled to West Jefferson in Madison County, Ohio to stay with her mother and appellee, her stepfather, when appellee became ill. During her stay at appellee's home, appellant's mother also became ill and passed away. Appellant decided to stay in Ohio following her mother's death in order to care for appellee.
[2] Appellant moved back to Wisconsin based upon the alleged termination of a previously executed personal services contract. On September 15, 1995, appellant and appellee executed an employment agreement which provided that appellant would provide personal care and services such as cooking, cleaning, laundry, and transportation to medical appointments for appellee in exchange for appellee's agreement to devise his South Chester Street residence and adjoining 1.66 acreage by will to appellant. The agreement also permitted appellant and her family to reside in appellee's home rentfree. Appellant alleges that appellee fired her on June 19, 1996 and that she thereafter moved back to Wisconsin in July 1996.
[3] We note that based upon our interpretation of the clear and unambiguous terms of the lease, appellant should have provided written notice of her intent to renew the lease by December 1, 1996, not December 31, 1996, as the trial court found. However, this fact is irrelevant since appellant did not send written notice of her intent to renew the lease to appellee by either date.
[4] Appellant's sexual harassment claim is still pending before the trial court and is not a part of the present appeal.
[5] There is no evidence to support appellant's assertion that appellee has refused to return any unused construction materials which appellant may have left on the property. Whether appellant surrendered the leased property is irrelevant as we find that she failed to timely renew the lease causing it to expire and equity will not provide her with an excuse which would relieve her of the duty to comply with the renewal provisions contained in the lease.