JOURNAL ENTRY AND OPINION
Plaintiff-appellant, Meadowbrook Development Corporation (appellant), appeals the decision of the Bedford Municipal Court that found appellant entitled to damages of fifty-one dollars on a breach of a lease agreement. For the reasons that follow, we affirm.
A review of the record reveals that defendant-appellee, Joan Roberts (Roberts), entered into a lease agreement with appellant in October 1996 for the rental of an apartment. According to the agreement, the term of the lease was to commence November 1, 1996 and was automatically renewable in one-year increments unless appellant gave a sixty-day written notice of her intent to leave prior to the expiration of the lease term.
In May 1999, appellant informed a Ms. Dorothy Lisinsky,[1] an employee in the office of appellant, that she was viewing potential properties with the intention of buying a home and, if successful, would not be renewing her lease agreement. Roberts testified that she not only orally informed Ms. Lisinsky of her intention to move but that she reduced it to writing at Ms. Lisinsky's request with the understanding that the latter would pass on this information. Throughout the next couple of months, Roberts periodically updated Ms. Lisinsky as to her progress in purchasing a home. Roberts testified that she specifically informed Ms. Lisinsky in June 1999 that she signed a purchase agreement. On September 27, 1999, she once again submitted a written notice of her intention to vacate the apartment at the end of October 1999. Notwithstanding, Barbara Yungwirth, an accounts receivable clerk for appellant, testified that the only written notice she received from Roberts was the one dated September 1999.
In a letter acknowledging Roberts's intention to move from the apartment, appellant stated:
 We regret we cannot accept your offer to terminate your Lease prior to the end of its term, namely, October 31, 2000. You will continue to be responsible for rent and utilities[.] [H]owever[,] upon return of your keys, we will act as your agent in the rerental of your apartment. (sic) Your total potential liability if the apartment is not Leased (sic) prior to October 31, 2000, is $5,844.00, plus damages and utility bills.
 You will note that Section Five (5) of your Lease Agreement specifically stipulates that the Security Deposit may not be used for the payment of the last month's rent. You are asked to contact the Main Office to discuss payment options.
Roberts vacated the premises by October 31, 1999 but did not return the keys until November 11, 1999. The apartment was rerented in March 2000.
In the final statement prepared by Ms. Yungwirth, appellant determined that it owed Roberts a total of $542.93, which represented her security deposit, key deposit and interest owed under the terms of the lease while Roberts owed appellant a total of $2,058.93, which represented four months rent from November 1999 through February 2000, electric charges and miscellaneous damages. Offsetting these charges against each other, appellant claimed that Roberts owed appellant $1,516.00.
When Roberts failed to pay this amount, appellant filed a complaint for damages against Roberts claiming that Roberts failed to give sixty days notice of her intent to vacate and therefore her rent liability extended until March 2000 when the apartment was relet. Roberts answered and counterclaimed for the return of her security deposit and for attorney fees.
The matter proceeded to trial on May 7, 2001. In an entry journalized May 8, 2001, the court stated:
 Therefore, the Court concludes that given the size of this apartment complex and the ongoing vacancy rate that as a matter of equity between the parties that Defendant[']s non-conforming notice did not place an additional financial burden on Plaintiff. Moreover, given the Plaintiff's policy of not allowing any month to month tenancy for any reason, it is unreasonable to suppose that ordinary people can regulate their lives to conform with the Plaintiff's lease.
The court thereafter found that appellant was entitled to damages of $593.93, which represents rent for the month of November 1999, electric charges and miscellaneous damages. Additionally, it found that Roberts was entitled to the $542.93, which comprised her security deposit and miscellaneous fees incurred as stated above. Judgment was therefore entered for appellant in the amount of $51.00, plus interest. Roberts's request for attorney fees was denied.
Appellant now appeals and assigns two errors for our review.
 I.
In its first assignment of error, appellant contends that the trial court erred in failing to take into account that Roberts gave less than sixty days written notice as provided in the lease agreement and, as such, its decision limiting appellant's damages is against the manifest weight of the evidence.
Appellant relies on this court's decision in Goudreau Mgt. Co. v. Lancaster (Mar. 24, 1994), Cuyahoga App. No. 65015, unreported, 1994 Ohio App. Lexis 1208, for the proposition that a sixty-day notice of non-renewal is an acceptable lease provision as long as the language is clear and unambiguous. The lessee in Goudreau entered into a lease agreement with a termination provision very similar to that agreed to by Roberts in the case before this court; namely, the lease was automatically renewable in one year increments unless the lessee gave a sixty-day written notice to vacate before the end of the lease term.
 In review of the record, it is clear that the lease provision requiring sixty days notice of intent to vacate in writing is unambiguous. [Lessee] gave oral notice earlier than the sixty days. [Lessee] submitted notice in writing twenty-seven days prior to the end of her lease. Under the strict terms of the lease, [lessee] did not comply with the written notice requirement and the lease automatically renewed for another year. The apartment remained empty for eight months after [lessee] vacated, in spite of [the landlord's] efforts to relet the premises through newspaper advertisements.
Id. at 4-5.
The Goudreau court thereafter refused to apply equitable principles to relieve the lessee from future rent finding no evidence that the lessee made an honest mistake in misreading the termination lease provision. In so doing, it distinguished its case from cases in another appellate district[2] where the termination provision appeared confusing to the lessee. The Goudreau court stated:
 We are forced to distinguish the present case from the two Lake County cases. We do not find that [the landlord] was prejudiced by [the lessee's] failure to give written notice, however, the lease at issue here was clearly written and unambiguous. We can not find that [the lessee] made an honest mistake in misreading the lease provisions. We decline the opportunity to extend the equitable principles stated in Ward[3]
any farther than they have been by the Lake County Court of Appeals.
Despite having given oral notice more than sixty days prior to the end of the lease term, the Goudreau court concluded that the lessor had no actual notice of the lessee's intention to vacate at the end of the lease term and was therefore liable for the remainder of the lease or until the property was relet. In reaching its decision, the Goudreau declined to follow McGowan v. DM Group IX (1982), 7 Ohio App.3d 349.
In McGowan, the Tenth District Court of Appeals found that the lessor had actual knowledge of a lessee's intention to vacate the premises prior to the end of the lease term despite having failed to give the required written notice.
 The purpose of requiring written notice is not to be hypertechnical but, instead, to create certainty. Here, [lessors] were aware for several months of [lessee's] intent to terminate the tenancy as soon as possible. In fact, [lessee] testified that his payment of rent for the entire term was necessitated by [lessors] refusal to make any effort to re-rent the premises earlier. At no time is there any indication that [lessors] advised [lessee] that they were going to insist upon written notice or a new month-to-month tenancy. To require same under the circumstances of this case would be unconscionable, even though the provision of the lease itself is not unconscionable.
 Rather, it is the action of lessors under the peculiar circumstances of this case which is unconscionable. There was clearly knowledge on the part of [lessors] of [lessee's] intent to vacate, and [lessors] were not prevented or delayed in finding a new tenant at the end of the term. In short, additional written notice would have served no purpose in this case. [Lessors] have attempted to take advantage of a hypertechnical construction and application of the lease agreement.
Unlike McGowan, Roberts was informed that written notice was required. Nonetheless, Roberts testified that she did provide some form of written notice as early as May 1999 to appellant's former employee, Ms. Lisinsky, although she did not retain a copy of this document nor does appellant claim to have such a document. Notwithstanding, this same employee was well aware of Roberts's intention to vacate as she was regularly apprised of Roberts's progress in purchasing a home. Moreover, this same employee was informed at the time Roberts signed a purchase agreement that Roberts would not be renewing her lease at the expiration of its term. Consequently, we depart from the reasoning set forth in Goudreau and conclude that appellant had more than sixty days actual notice of Roberts's intention to vacate the premises prior to the end of the lease term despite Ms. Yungwirth's testimony that the only written notice she received was the untimely notice dated September 27, 1999. See S.Ct.R.Rep.Op. 2(G)(1).
As in McGowan, appellant is attempting to take advantage of a hypertechnical construction of this particular lease provision. [W]here a tenant has timely substantially complied, but not in writing, with the lease provision, and the landlord has actual knowledge of the tenant's intent to vacate at the expiration of the lease term, to require further written notice would be both hypertechnical and unconscionable. McGowan, 7 Ohio App.3d at the syllabus. It was not error therefore for the trial court to find as it did. Accord Ballard v. KMG Investors, Ltd. Partnership, d/b/a Evergreen Apts. (Aug. 3, 1993), Union App. No. 14-93-5, unreported, 1993 Ohio App. Lexis 3882; Seginak v. ABC Mgt. Co. (Sept. 18, 1987), Trumbull App. No. 3816, unreported, 1987 Ohio App. Lexis 8758.
Moreover, we are inclined to depart even further from Goudreau and state that, under the facts of this case, a sixty-day termination provision such as in the case at bar is not an acceptable lease provision despite its clear and unambiguous language. As stated by the municipal court, it is unreasonable to suppose that ordinary people can regulate their lives in such a manner so as to conform to a sixty-day lease termination provision. This is especially true in cases such as this where you have a lessee in the process of purchasing a home who is subject, to a great extent, to the time parameters imposed by not only the sellers of the property but also by a usually unaccommodating lending institution.
Appellant's first assignment of error is not well taken and is overruled.
 II.
In its second assignment of error, appellant contends that it is entitled to eighteen percent interest as provided in the lease agreement rather than the statutory rate of ten percent as provided by R.C.1343.03(A).
Appellant relies on Cafaro Northwest Partnership v. White (1997),124 Ohio App.3d 605 and P. W. F., Inc. v. C.S.U. Pizza, Inc. (1993),91 Ohio App.3d 724 wherein the courts in those cases upheld a contractual provision in a commercial lease that provided for a rate higher than the statutory rate of interest where a written contract entered into between the parties provided as much. Appellant asks this court to extend this reasoning to residential leases as well. We decline to do so.
Courts that have relied on these cases and the legal principle that formed the basis of their reasoning have all involved commercial leases. R.C. Chapter 5321 governs residential leases and establishes various rights and obligations between landlords and tenants in this state. It further governs the relationship between landlords and tenants with regard to the rental agreement for residential premises. Laster v. Bowman (1977), 52 Ohio App.2d 379, 382. While nothing in this chapter expressly permits or prohibits a lease provision that charges a specific rate of interest, we are not convinced that such an omission sanctions a rate of interest in excess of the statutory amount merely because the term is contained in a lease agreement executed between parties of unequal bargaining ability. We therefore find no error in the trial court's decision to award statutory interest.
Appellant's second assignment of error is not well taken and is overruled.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., CONCURS and ANN DYKE, J., DISSENTS WITH DISSENTING OPINION.
[1] According to Roberts, this employee was the same employee who originally showed her the apartment and was present when she signed the lease. It appears from the record, however, that Ms. Lisinsky no longer works for appellant, having terminated her employment sometime just prior to November 1999.
[2] See Mentor Lagoons, Inc. v. Ventra (Sept. 7, 1990), Lake App. No. 14-026, unreported, 1990 Ohio App. Lexis 3920; Mentor Lagoons, Inc.(1984), Lake App. No. 10-056, unreported, 1984 Ohio App. Lexis 9677.
[3] The Goudreau court references Ward v. Washington Distrib., Inc. (19 80), 67 Ohio App.2d 49, which found that equity would relieve a lessee from consequences of the failure to give notice at the time, or in the form and manner, required as a condition precedent to the renewal of a lease, where such failure results from accident, fraud, surprise or honest mistake, and has not prejudiced the lessor. Id. at the syllabus.