JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, EA Northeast Limited Partnership ("EA"), appeals from a judgment entered by the Cuyahoga County Court of Common Pleas after a bench trial. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} The following facts were established at trial: On December 19, 2000, EA entered into a five-year lease agreement with plaintiff-appellee, Vivi Retail, Inc., dba TNT Fashions ("TNT"), for the rental of store property located at Buckeye Plaza in Cleveland, Ohio.
 {¶ 3} Pursuant to the terms of the lease agreement, TNT was afforded two five-year renewal options. The lease provided that TNT give written notice of its election to exercise this option at least 120 days before the expiration of the lease, in this case, no later than July 3, 2005.
 {¶ 4} TNT did not notify EA in writing by July 3, 2005 of its intent to renew their lease. However, on July 28, 2005, Douglas Rice ("Rice"), EA's leasing representative, called Man Yo Han ("Han"), the owner of TNT, to see if TNT was planning on exercising the renewal option. Han told Rice that TNT wanted to renew the lease.
 {¶ 5} Shortly thereafter, in early August 2005, TNT's attorney, Osborne Mills ("Mills"), called Rice to discuss potential modifications of certain terms in the lease. Several days after this phone call, on August 19, 2005, Mills sent Rice a follow-up email confirming details of the phone conversation and stating the following: "As we also discussed in our *Page 4 
call, I also confirm Man Yo Han's telephone conversation with you earlier in July, in which he indicated his desire to renew the lease for an additional 5-year term."
 {¶ 6} Neither Rice nor any other employee of EA objected to, questioned, rejected, or contested this confirmatory email from TNT. However, on August 24, 2005, Rice sent an email to another EA colleague expressing concern about TNT's email. Rice acknowledged that a response should be made, particularly if EA intended to object to TNT's exercise of the option. Specifically, Rice wrote that he would "try and duck [TNT's attorney] as long as possible, but would prefer maybe if Mark respond to them saying that they did not exercise their renewal option and LL will decide if a renewal term will be granted."
 {¶ 7} On October 14, 2005, EA's attorney, Jason Edwards ("Edwards"), called Mills to discuss a possible bridge extension to the lease. Mills told Edwards that an extension would not be necessary because TNT had exercised the renewal option.
 {¶ 8} On October 23, 2005, Edwards sent Mills an email stating that it was EA's "position" that TNT did not effectively exercise its renewal option and that TNT would be required to vacate the premises. However, Edwards assured Mills that he would look into the matter and follow up with him. Edwards did not call Mills back.
 {¶ 9} On December 19, 2005, EA served TNT with a three-day "Notice to Leave Premises."
 {¶ 10} On December 21, 2005, TNT filed a complaint for declaratory judgment concerning its rights and obligations under the lease, including its right to renew the lease. *Page 5 
On February 9, 2006, EA filed a counterclaim alleging that TNT was unlawfully occupying the premises because TNT failed to notify EA in writing of its intent to renew by July 3, 2005.
 {¶ 11} On June 1, 2006, both parties filed motions for summary judgment, which were denied by the trial court. On November 22, 2006, the matter proceeded to a bench trial.
 {¶ 12} On April 19, 2007, the trial court entered judgment for TNT and denied EA's attempt to evict TNT from the premises. In its Findings of Fact and Conclusions of Law (the "Decision"), the trial court concluded that TNT was entitled to equitable relief from its technical failure to give notice at the time and manner set forth in the lease because (1) its minimally late notice was the result of an honest mistake and (2) EA did not demonstrate any prejudice arising from TNT's honest mistake and delay in exercising the option. The trial court also concluded that EA waived the right to insist on strict compliance due to the actions or inactions of its employees. On September 25, 2007, the trial court awarded TNT attorney fees in the amount of $95,341.
 {¶ 13} It is from these rulings that EA now appeals and raises nine assignments of error for our review, which shall be addressed together and out of order where appropriate.
 {¶ 14} "II. The trial court erroneously held that, as a matter of law, TNT was entitled to equitable relief from its failure to give notice at the time and manner required by the lease agreement as a condition to renew the lease option. *Page 6 
 {¶ 15} "IV. The trial court's factual finding that there is no prejudice to EA if TNT is relieved of the consequence of the untimely exercise of an option to renew is manifestly against the great weight of the evidence.
 {¶ 16} "V. The trial court's factual finding that failure to exercise the option was a result of a `mistake' of the type justifying equitable relief is manifestly against the great weight of the evidence and contradicts applicable law.
 {¶ 17} "VI. The trial court's factual finding that the option to renew had been effectively exercised with select modifications to exclusivity is manifestly against the great weight of the evidence and contradicts applicable law."
 {¶ 18} In these assignments of error, EA challenges the weight of the evidence and argues that the trial court's findings of fact with regard to mistake and prejudice are against the weight of the evidence and contradict applicable law.
 {¶ 19} When reviewing the evidence in a civil case to determine whether the judgment is against the manifest weight of the evidence, this Court must consider whether there is some competent, credible evidence going to all the essential elements of the case.Bryan-Wollman v. Domonko (2007), 115 Ohio St. 3d 291, 2007-Ohio-4918;C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. In applying this standard, we must presume that the trial court's findings are correct and will not reverse the trial court based solely upon a different evaluation of the credibility of the witnesses at trial.Seasons Coal, Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81. This presumption arises because the trial judge had an opportunity "to view the witnesses and observe their demeanor, gestures and voice *Page 7 
inflections, and use these observations in weighing the credibility of the proffered testimony." Id. A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. Id. at 81.
 {¶ 20} Even though a lease may be clear and unambiguous, equitable relief may still be granted to relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner, required as a condition precedent to the renewal of the lease, where (1) such failure results from accident, fraud, surprise or honest mistake, and (2) has not prejudiced the lessor. Ward v. Washington Distributors,Inc. (1980), 67 Ohio App.2d 49, 53.
 {¶ 21} Here, the trial court appropriately found that TNT made an honest mistake. Han, TNT' s owner, testified that he owns many stores and simply did not remember the exact renewal date for the Buckeye Plaza location. He also testified that in his experience, landlords have notified him in advance when he needs to exercise his renewal option by a certain date. Indeed, Han testified that Rice, the leasing agent for EA, notified him and asked him if he planned to exercise a renewal option regarding another location that EA rents to him. Moreover, Rice himself testified that he believed that Han's failure to timely renew was an honest mistake.[1] Accordingly, we find that competent, credible evidence supports the trial court's finding that TNT made an honest mistake when it failed to timely renew its option. *Page 8 
 {¶ 22} Next, we find that the trial court appropriately found that TNT's delay in exercising its renewal option did not prejudice EA. Under Ward, supra, the prejudice must arise from the delay itself. Specifically, the landlord must have changed his position in reliance upon the late notice. See, also, Evans v. Bauer (Aug. 31, 1989), Clark App. No. 2445; Benton v. Tecumseh Corrugated Box. Co. (Oct. 25, 1985), Wood App. No. WD-85-9.
 {¶ 23} Here, there is no evidence that EA changed its position in reliance upon TNT's late notice to renew its option. EA had not secured another tenant nor had it entered into a lease agreement with another tenant. While there is evidence that EA engaged in negotiations with another national store chain (Ashley Stewart), EA did not enter into a lease with them, and, indeed, had advised them that it would be renewing its lease with TNT in July 2005. Accordingly, we find that competent, credible evidence supports the trial court's finding that EA was not prejudiced by TNT's failure to timely renew its option.
 {¶ 24} In sum, we find that competent credible evidence supports the trial court's decision that TNT was entitled to equitable relief from the provision in the lease that the option to renew had to be exercised at least 120-days prior to the expiration of the current leasehold term.
 {¶ 25} Assignments of Error II, IV, V, and VI are overruled.
 {¶ 26} "I. The trial court erroneously held that, as a matter of law, appellant EA Northeast Limited Partnership (`EA') waived its right to demand that appellee Vivi Retail, Inc., d/b/a TNT Fashions (`TNT') fully comply with the terms and/or conditions precedent to TNT's exercise of an option to renew the lease. *Page 9 
 {¶ 27} "III. The trial court's factual finding that between July 28, 2005 and October 23, 2005, TNT received no indication verbal or otherwise that they would be evicted or that the renewal of the option was challenged is manifestly against the great weight of the evidence and in contravention with applicable law.
 {¶ 28} "VII. The trial court's factual finding that `it was not until 12-19-05, practically five months after being asked if they were going to stay, when [TNT] was served with the notice to leave did [TNT] become aware that the option renewal had been definitely rejected' is manifestly against the great weight of the evidence."
 {¶ 29} In these assignments of error, EA argues that the trial court's findings of fact with regard to waiver are against the manifest weight of the evidence and contradict applicable law.
 {¶ 30} When construing and interpreting lease provisions, courts have applied traditional contract principles. See Myers v. E. Ohio GasCo. (1977), 51 Ohio St. 2d 121, 125. If the language of a lease is clear and unambiguous, courts must enforce the instrument as written.Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657, 665. However, waiver of a contract term can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term. Convenient Food Mart Inc. v. Atwell, Lake County App. No. 2003-L-174, 2005-Ohio-704.
 {¶ 31} Here, the trial court appropriately found that EA waived its right to insist that TNT comply with the 120-day notice provision in its Lease. Rice, the leasing agent for EA, called Han, the owner of TNT, shortly after the option expired to ask if TNT wanted to *Page 10 
exercise the option and remain on the premises. Han responded that he wanted to renew and told Rice that his lawyer would be in touch. Rice did not give any indication to Han that this agreement was not effective because it was late or verbal. In fact, Rice spoke with TNT's attorney shortly thereafter and requested that all lease correspondence occur via email. Mills, TNT's attorney, complied with this request and sent an email to Rice on August 19, 2005 confirming the phone conversation and TNT's desire to renew the option. Again, Rice did not object to, question, reject, or contest this confirmatory email from TNT. Accordingly, we find that competent, credible evidence supports the trial court's finding that EA waived the 120-day renewal requirement.
 {¶ 32} Assignments of Error I, III, and VII are overruled.
 {¶ 33} "VIII. The trial court erroneously failed to find, as a matter of law, that:
 {¶ 34} "TNT, as a tenant in sufferance, should be required to pay an amount equal to 200% of the rental payment for the period from expiration of the lease to the date TNT vacates the premises;
 {¶ 35} "TNT should be required to vacate the premises immediately; and
 {¶ 36} "TNT should be required to pay EA attorney fees and costs associated with enforcing the lease and obtaining possession of the premises.
 {¶ 37} "IX. The trial court erroneously awarded TNT attorney fees and costs." *Page 11 
 {¶ 38} In the eighth and ninth assignments of error, EA argues that it, and not TNT, is entitled to attorney fees as the prevailing party, rental monies from TNT in an amount equal to 200% of the rental payment for the prior year (tenant in sufferance), and eviction.
 {¶ 39} In the previous assignments of error, we held that the trial court did not err when it found that TNT was entitled to equitable relief from the renewal provisions of the lease because of (1) honest mistake, (2) lack of prejudice to EA and (3) waiver. Accordingly, EA is not entitled to any of the contractually specified remedies it seeks. Rather, TNT is the prevailing party and is entitled to fees and costs pursuant to the terms of the lease.
 {¶ 40} Assignments of Error VIII and IX are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Rice tr. 71. *Page 1