THE BARR HOTEL CO., APPELLEE, *v.* LLOYD MACKEOWN BUICK CO., APPELLANT.

(No. 1097—Decided June 20, 1957.)

*Mr. Albert L. Negin,* for appellee.
*Mr. Anthony J. Bowers,* for appellant.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Lima Municipal Court granting to the plaintiff a writ of restitution in an action in forcible entry and detainer. Plaintiff-appellee, hereinafter referred to as lessor, and defendant-appellant, hereinafter referred to as lessee, are both Ohio corporations with places of business in Lima, Ohio. From some time in 1948 until October 31, 1953, lessee was a tenant of premises owned by lessor, consisting of an automobile sales and service building and a used car sales lot.

As of October 31, 1953, a new written lease of "thirty-six (36) months" duration was executed by the parties, the same to expire on October 31, 1956. This lease provided, among other things:

"FIFTEENTH: The lessee may, at its option, obtain a renewal or an extension of this lease for a further term of equal duration and upon like terms, covenants and conditions by notifying the lessor, sixty (60) days or more prior to the expiration of the term herein specified, of its intention so to do."

"THIRTEENTH: All notices to be given hereunder by either party shall be in writing and given by personal delivery to the lessor or to one of the executive officers of the lessee, or shall be sent by registered mail addressed to the party intended to be notified at the post-office address of such party last known to the party giving such notice, and notice given as aforesaid shall be a sufficient service thereof, and shall be deemed given as of the date when deposited in any post office, or in any post-office box regularly maintained by the federal government."

The lessee did not, on or prior to September 1, 1956, the sixtieth day prior to the expiration of the lease, give to lessor written notice of lessee's election to exercise its option to renew or extend the lease, but Lloyd W. MacKeown, the president of lessee, testified that from time to time before October 31, 1956, he orally notified various officers of lessor, including O. O. Barr, president of lessor at the time, that he desired to exercise the option to renew the said lease. This evidence is disputed and the record is devoid of any specific testimony that the requirement of written notice had been waived by the lessor or that oral notice was accepted by lessor.

By registered letter dated September 5, 1956, the lessor notified lessee that inasmuch as lessee had not exercised its option to renew its lease the same would expire on October 31, 1956, and that lessee would be on a month to month tenancy thereafter. C. O. Porter, vice-president and general manager of lessor, testified, "I notified him on September 5, 1956," and the president of lessee testified that he received the letter of September 5, 1956, but there is no evidence otherwise as to the

date on which this letter was mailed or as to the date on which this letter was received.

By registered letter dated August 30, 1956, and mailed on September 8, 1956, lessee advised lessor "that we wish to exercise the renewal option on our lease with the Barr Hotel Company."

By registered letter dated September 12, 1956, addressed to "Mr. Lloyd McKeown" and signed "C. O. Porter Realty Company," MacKeown was advised that "we will expect possession of the premises you now occupy, January 1, 1957."

On December 21, 1956, Paul Geren, an employee of Porter, took a notice to leave premises of standard form to the premises occupied by lessee. On direct examination he testified as to the manner of service, as follows:

"Q. Now, to whom did you hand the original? A. You mean the man's name?

"Q. If you know. A. I do not know. There was one—

"Q. State whether or not you asked for Mr. Lloyd Mac-Keown when you entered the place of business. A. I asked if Mr. MacKeown was in.

"Q. And what reply did you get? A. I was told that he wasn't.

"* * *

"Q. And who was in the office at the time you served this notice? A. To my knowledge, there was only one person in the office. I don't know his name. He was setting at a desk in the showroom.

"Q. Did you make any inquiry from him as to his capacity there? A. No, I did not.

"Q. Was this man in charge of the office at the time you were there? A. I would assume that he was; he was the only man in the building.

"* * *

"Q. This man that you gave this document to was the only person in charge of that office, am I right on that?

"* * * A. He was the only person in the office that I could see.

"Q. Did you tell him what you were serving him with? A. No, I did not.

"Q. You just handed him this? A. I gave it to him; asked him to give it to Mr. MacKeown.

"Q. And what was his reply? A. Said that he would."

And on cross-examination he testified:

"Q. * * * and likewise, you do not know who the man was that you gave this notice to? A. No.

"Q. What he did with the notice, if anything, you are not aware? A. I have no knowledge of what he did with it."

Geren's testimony is the only evidence introduced by lessor as to the manner of service of the notice to leave premises, except that of Negin, attorney for lessor, who testified that he made the indorsement on the copy of the notice to leave premises, and that the same was served on the 21st day of December 1956 "on the within named Lloyd MacKowen [sic] Buick by leaving a written copy thereof at usual place of business."

MacKeown testified that he had never seen the original of the notice to leave premises, and that he did not know whether any of the other officers of lessee had received same.

Lessee not vacating the premises, lessor brought action in forcible entry and detainer on January 12, 1957. Service of summons was made on lessee on said date, a Saturday, by personally serving its secretary-treasurer, although it was claimed by lessee that Lloyd MacKeown, its president, did not personally see same until Monday, January 14, 1957. Appearance date under said summons was Monday, January 21, 1957. Lessee on Saturday, January 19, 1957, filed a written demand for jury trial and an answer pleading the aforesaid lease, alleging that the lessee had exercised its option to renew same and was rightfully in possession of the premises, and otherwise generally denying the allegations of lessor's petition. Lessee moved for a continuance, and the court continued the trial until Wednesday, January 23, 1957. The court, under its rule that "demand for jury * * * shall be made at least six days before the date of hearing of said case; Sundays and holidays shall count as no (0) day," denied lessee's demand for jury and proceeded to hear the cause on January 23, 1957.

In addition to the matters hereinbefore set forth, MacKeown, testifying for the lessee, said that starting in 1948, and continuing through the term of the lease in question, the lessee

had made capital improvements on the premises, consisting of a new showroom at the cost of $33,000, a passageway from the adjoining hotel at the cost of $5,000, blacktop on one-half of the used car lot at the cost of $2,200, and the removal and replacement of a brick wall at the cost of $1,200. He testified further that he considered lessee's business to be worth from $170,000 to $175,000. No evidence other than that hereinbefore mentioned was offered by lessee in explanation of the fact that no written notice of the exercise of the option to renew the lease was given until September 8, 1956.

The lessee assigns error in a number of particulars which we will mention as they are considered.

1. Lessee contends that the Municipal Court did not have jurisdiction because the case presented questions as to title to the premises and equitable defenses, and that, if the Municipal Court had jurisdiction, it erred in refusing to consider the equitable defenses of lessee.

No question of title was raised by the pleadings or presented in the evidence. The only issue was the right of possession of the premises. The record does not show that the court refused to or did not consider the equitable defenses of lessee. To the contrary, it appears that the court consistently admitted testimony as to the improvements which lessee had placed on the premises and the hardship which would be suffered by lessee's loss of possession thereof.

There is a line of cases which arose under various former statutes pertaining to the jurisdiction of individual Municipal Courts when originally created holding that such courts do not have jurisdiction of forcible entry and detainer actions when equitable questions are involved, on the ground that the jurisdiction of Municipal Courts in such cases is no greater than that of justices of the peace who have no equity jurisdiction. An examination of these various statutes discloses that the Municipal Courts were either given no jurisdiction to determine equitable questions raised in forcible entry and detainer cases or that their jurisdiction in such cases was derived specifically and entirely from the statutory provisions giving Municipal Courts jurisdiction in any civil action wherein justices of the peace have jurisdiction. However, all Ohio Municipal Courts

now derive their jurisdiction from the provisions of the Municipal Court Act adopted by the Legislature in 1951. This act not only gives Municipal Courts jurisdiction in any civil action wherein justices of the peace have jurisdiction but specifically gives such courts jurisdiction in "any action of forcible entry and detainer" (subparagraph H, Section 1901.18, Revised Code) and further provides, in Section 1901.18, Revised Code:

"* * * a Municipal Court has original jurisdiction within its territory:

"* * * *

"(C) In any action at law based on contract, to determine, preserve, and enforce all rights, legal and equitable, involved therein, * * * and to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties thereto * * *."

We are of the opinion that, in an action in forcible entry and detainer against a defendant who has held under a lease which includes an option to renew, Municipal Courts have adequate jurisdiction under the provisions of the Municipal Court Act to hear and determine equitable questions pertaining to the exercise of said option. See *Sorrels* v. *Pugliesi,* 67 Ohio Law Abs., 193, 117 N. E. (2d), 221. See, also, *Rea* v. *Helsley,* 86 Ohio App., 114, 90 N. E. (2d), 168, involving a similar provision of the former act pertaining to the Columbus Municipal Court.

2. We cannot agree with lessee's contention that the court erred in refusing to grant lessee more than a two-days continuance, for even though Section 1923.08, Revised Code, permits a continuance of eight days, the eight days therein provided for is merely the maximum continuance which may be allowed without bond, and, within that time, the length of continuance is still within the discretion of the trial court.

3. Lessee contends that the court erred in excluding certain evidence offered in chief, namely, the testimony of Lloyd MacKeown and Lee Clawson as to conversations with O. O. Barr, Sr., when he was president of lessor. An examination of the record reveals that the court did exclude testimony of these witnesses as to such conversations, but at neither time did lessee proffer the evidence excluded. Under such circumstances this court cannot determine whether there has been er-

ror in such exclusion, and the assignment of error is therefore not well taken. See 3 Ohio Jurisprudence (2d), 76, Appellate Review, Section 212, and authorities therein cited.

4. Lessee assigns error in that the court refused to grant its motion for a directed verdict at the close of the lessor's case and, when renewed, at the close of the trial, claiming under this assignment that lessor failed to prove that the notice to leave premises was served in the manner required by law. Since the trial was had to the court without a jury and the motions actually made were motions to dismiss lessor's petition, we will treat this assignment as referring to such motions rather than motions for a directed verdict.

Section 1923.04, Revised Code, prescribes the notice and manner of service of same as follows:

"A party desiring to commence an action under Sections 1923.01 to 1923.14, inclusive, of the Revised Code, must notify the adverse party to leave the premises, for the possession of which action is about to be brought, three or more days before beginning the action, by handing a written copy of the notice to the defendant in person, or by leaving it at his usual place of abode."

Proper service of the notice to leave premises is not only a condition precedent to beginning an action in forcible entry and detainer but, when controverted, as herein, is an essential element of plaintiff's case in chief. It is apparent that the Legislature intended that proper service of a notice to leave premises can be had on an individual by either of the two prescribed methods, and there is no valid reason to believe that the Legislature intended that service on a corporation should be limited to only one of such methods. We cannot find that lessor has proved any personal service on lessee, and, in view of the fact that lessor endorsed on the copy of the notice that same was served "by leaving a written copy thereof at usual place of business," it appears that lessor does not rely on personal service. The issue is then whether a written copy of the notice to leave premises was left at the "usual place of abode" of lessee.

We have been unable to find any cases in Ohio which interpret the term, "usual place of abode." Webster's New International Dictionary (2 Ed.) defines "abode" as, *inter alia,*

"residence." The Supreme Court of Ohio said in the case of *Sweeny, Recr.,* v. *Keystone Driller Co.,* 122 Ohio St., 16, 19, 20, 170 N. E., 436:

"The place where an Ohio corporation is to be located or its principal business transacted is required by Section 8625, General Code, to be set forth in its articles of incorporation, and change thereof may be made only in the manner prescribed by statute. Sections 8719 to 8722, General Code. The evident purpose of this requirement is that there may be no uncertainty as to the place of residence of the corporation. The articles of incorporation are of record, and from that source its designated residence may be readily ascertained and known with definiteness and certainty. If such designation is not controlling, the place of residence in many instances would be in doubt, and in numerous cases, where a corporation is engaged in business in various localities in the state, it would be difficult to determine its place of residence or the place where its principal business is transacted otherwise than at the end of a lawsuit through the determination of a court. * * * This court held in the case of *Pelton* v. *Transportation Co.,* 37 Ohio St., 450, 457, that a certificate of incorporation specifying the place where the principal office of the company is to be located is conclusive. This declaration was relative to the return of personal property for taxation, but the principle involved is applicable here. In a comparatively recent case, *State, ex rel. Stanton, Pros. Atty.,* v. *Zangerle, Auditor,* 117 Ohio St., 436, 159 N. E., 823, this court approved and followed the *Pelton case* and held that the principal office of the corporation, which constitutes its residence or domicile, is not to be determined by the amount of business transacted, but by the place designated in its articles of incorporation."

Section 1701.01, Revised Code, applicable at the time the notice to leave premises was served, provides that "the location of the 'principal office' of a corporation is the place named as such in its articles." We are of the opinion that the principles expressed in the *Sweeny case* are likewise applicable here, and that service of a written copy of a notice to leave premises upon a corporation by leaving it at its "usual place of abode" must be made by leaving same at the principal office of such corpora-

tion named in its articles of incorporation. There is no evidence whatsoever in the record as to the location of the principal office of lessee and therefore no proof that service of the notice to leave premises was made at such office. Moreover, had there been proof that the principal office was located on the premises in question, we would not be inclined to hold that leaving such notice with a man sitting at a desk in a showroom, whose name and capacity were unknown, who was merely assumed to be in charge, and who in fact could actually have been a customer, a loafer, or even a trespasser, would be sufficient service to satisfy the requirements of the statute.

Nor could the registered letter of September 12, 1956, constitute proper notice for the same was addressed to "Mr. Lloyd McKeown," was signed "C. O. Porter Realty Company" and was not sent to lessee, in either its corporate name or capacity, by lessor, in either its corporate name or capacity. The only evidence of C. O. Porter's authority was in his capacity as vice-president and general manager of lessor and not as a realtor on its behalf.

The condition precedent to commencing the action not having been proved, the Municipal Court had no jurisdiction of the matter and erred prejudicially to lessee in not dismissing the lessor's petition and rendering judgment for lessee at the close of lessor's case in chief and, failing that, likewise erred prejudicially to lessee in not dismissing the petition and rendering judgment for lessee at the close of the trial.

5. Since error has been found prejudicial to lessee, it is obviously not necessary for this court to decide whether the Municipal Court was correct in refusing to grant lessee's demand for a trial by jury. We therefore express no opinion with regard to the assignment of error pertaining thereto.

6. Except as may have been argued and disposed of under the aforementioned assignments of error, the remainder of lessee's assignments of error are not argued in its brief, and this court, exercising the prerogative bestowed upon it by Section 2505.21, Revised Code, elects to disregard such assignments of error.

For the errors hereinbefore mentioned, the judgment of the Municipal Court is reversed, and this court rendering the judg-

ment which the court below should have rendered dismisses the petition of the lessor and renders final judgment for lessee.

*Judgment reversed.*

MIDDLETON, P. J., and YOUNGER, J., concur.