[Cite as *KeyBank, N.A. v. MRN Ltd. Partnership*, 193 Ohio App.3d 424, 2011-Ohio-1934.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95328**

---

# KEYBANK, N.A., ET AL.,

APPELLANTS,

v.

# MRN LIMITED PARTNERSHIP, ET AL.,

APPELLEES.

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-582690

**BEFORE:**   Keough, J., Boyle, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** April 21, 2011

Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A., Margaret M. Metzinger, and Stewart D. Roll, for appellants.

Walter & Haverfield, L.L.P., Jonathan D. Greenberg, and Morris L. Hawk, for appellees MRN Limited Partnership and MFG buildings, L.L.C.

Haber Polk Kabat, L.L.P., and Andrew A. Kabat, for appellee 2063 East Fourth, L.L.C.

KATHLEEN ANN KEOUGH, Judge.

{¶ 1} Plaintiffs-appellants, KeyBank, N.A., as Trustee of the Harris Price Trust, and Joanne P. Brook, Robert D. Price, and Beverly Price Foote, appeal from the trial court's judgment holding that defendants-appellees, MRN Limited Partnership ("MRN"), MFG buildings, L.L.C. ("MFG"), and 2063 East Fourth, L.L.C. ("2063"), are the owners of the McCrory Building, which is located on East Fourth Street in Cleveland, Ohio.[1] Appellants contend that the trial court erred in (1) denying their pretrial motion for summary judgment, (2) granting appellees' motion to amend the pleadings, (3)

---

[1]The named defendants in this case were MRN, MFG, and 2063. Each of these entities was established by developer Rick Maron as part of his project to renovate the East Fourth Street district. A fourth entity, East Fourth II Limited Partnership, was also created as part of Maron's project. Maron used these entities to purchase the numerous interests in the East Fourth Street district. It was undisputed that through a series of subsequent acquisitions and transfers, the defendant entities transferred all their interest in the building to defendant-appellee 2063 by limited warranty deed dated December 24, 2003. For sake of clarity, we refer to appellees collectively, but recognize that the issue of ownership of the building is actually between appellants and appellee 2063.

finding that appellees were entitled to equitable relief, and (4) finding that the statute of frauds did not apply. Finding no merit to the appeal, we affirm.

## I. Background and Procedural History

{¶ 2} This case involves the parties' claims to property commonly known as the McCrory building, located at 2041 East Fourth Street, Cleveland, Ohio, under a ground lease and a sublease. Appellants acquired their interest in the building from their predecessors, who were lessees under the ground lease and sublessors under the sublease. The ground lease expired on March 31, 2005; the sublease expired on February 28, 2005.

{¶ 3} As pertinent to this case, paragraph 20 of the sublease provided:

{¶ 4} "In the event that the lessor hereunder shall not, on or before the said 14th day of February 2005, serve written notice of its election to purchase said buildings and improvements as above provided, the lessee shall have the right at any time on or before the 28th day of February 2005, to purchase, for the sum of one hundred dollars ($100), all and singular the right, title and interest of the lessor in, to and under * * * [the ground lease] on condition that said lessee give written notice of its election to make such purchase on or before said 28th day of February 2005, and shall have paid any and all rents and other sums, whatsoever, that shall have become due or payable to the lessor hereunder."

{¶ 5} Article 18 of the ground lease provided: "[T]he parties Lessors and

Lessees after the expiration of this lease, shall continue to hold, use, enjoy and own the improvements and land in fee as tenants in common, the share owned, held and enjoyed by each party being proportioned to the respective values of the land alone, and the buildings alone, contributed by each to the total value; and any existing liens or encumbrances against either said land or said buildings shall be transferred to the interest in the common property of the one contributing the property so encumbered; * * *."

{¶ 6} Appellants initiated this lawsuit in November 2005, by filing a complaint for an expedited summary proceeding in the Cuyahoga County Probate Court. Appellants alleged that they shared an interest as tenants in common with appellees under the ground lease and sought enforcement of an arbitration clause in the lease with respect to any disputes arising out of the lease. The probate court transferred the matter to the general division of the common pleas court.

{¶ 7} Appellants thereafter filed an amended complaint for expedited summary proceeding, adding 2063 as a defendant. Appellants did not amend their claims or the relief requested; the amended complaint was limited to a demand for arbitration.

{¶ 8} Appellees answered the amended complaint, denying that appellants had any property interest in the building or any right to arbitration. Each defendant asserted the affirmative defenses of merger,

waiver, estoppel, unclean hands, and laches. Defendants MRN and MFG also filed a counterclaim for declaratory judgment premised on the doctrines of merger, waiver, and equitable estoppel, and affirmatively sought an order from the trial court declaring that appellees were the sole and rightful owners of the building.

**{¶ 9}** The trial court granted appellants' request for arbitration. This court reversed on appeal,[2] however, and remanded the matter to the trial court for further proceedings.

**{¶ 10}** Upon remand, the trial court set the trial for January 26, 2009. Appellants' counsel subsequently requested additional time for discovery, and the trial court extended the deadlines and rescheduled the trial for March 9, 2009.

**{¶ 11}** Appellants' counsel subsequently sought more time to conduct discovery; the trial court granted the request, extended all the deadlines, and rescheduled the trial for June 15, 2009. Subsequently, the parties jointly requested an extension of the discovery deadlines. The trial court granted that request, but the trial date remained June 15, 2009.

**{¶ 12}** At the conclusion of discovery and following the submission of expert reports, all parties filed motions for summary judgment. In their

---

[2]*Keybank, N.A. v. MRN Ltd. Partnership*, 8th Dist. No. 88868, 2007-Ohio-5709.

motion, appellees argued that 2063 was the rightful owner of the building because they had exercised their option under the sublease to purchase appellants' interest in the building or, in the alternative, because equitable principles established their ownership of the building. In their motion for partial summary judgment, appellants argued that appellees had failed to timely exercise their option and, further, that they were not entitled to equitable relief.

{¶ 13} The trial court denied both motions for summary judgment. It held that appellees had failed to exercise their option in accord with the terms and conditions of paragraph 20 of the sublease because, although they had timely tendered payment of $100 to appellants, they had not given timely notice of their intent to exercise the option. The court further held, however, that "principles of equity may provide relief to the defendants." The trial court also denied appellants' motion for partial summary judgment, finding that there were genuine issues of material fact that precluded the grant of summary judgment to appellants.

{¶ 14} When the parties appeared for trial on June 15, 2009, the trial court was engaged in a criminal trial, so the court rescheduled the trial for August 26, 2009.

{¶ 15} Approximately one week prior to trial, appellants filed two motions in limine, one of which sought to prevent appellees from offering any

evidence regarding their entitlement to equitable relief. In their motion, appellants argued that 2063 had not raised an affirmative claim for equitable relief in its answer and, accordingly, was precluded from presenting evidence regarding equitable relief.

{¶ 16} When the parties appeared for trial on August 26, 2009, appellee 2063 made an oral motion to amend its pleadings to add an affirmative claim for equitable relief. The trial court granted the motion. The court also reopened discovery at the request of appellants and set a new trial date of February 3, 2010. Appellee 2063 filed its amended answer to appellants' complaint with counterclaims. Appellants subsequently sought leave to file a second amended complaint to more fully set forth their claim that they were tenants in common with appellees in the building, which the court granted. Appellee 2063 filed a timely answer with counterclaims, and appellants filed an answer thereto.

{¶ 17} The trial court subsequently conducted a bench trial in which it considered whether appellees were entitled to equitable relief under Ohio law. After hearing the evidence and considering the parties' posttrial briefs, the trial court held that appellees are the sole owners of the building.

## II. Facts

{¶ 18} The evidence adduced at trial demonstrated that the seeds for this dispute were sown in the mid to late 1990s, when developer Rick Maron

initiated a plan to convert East Fourth Street, an area of boarded-up storefronts and high crime, to an outdoor urban environment. To this end, Maron, through appellees, began to negotiate the purchase of the building with the various leaseholders. The undisputed evidence at trial demonstrated that as of late 1998 to early 1999, the following entities had interests in the building under the ground lease and the sublease: (1) landowner–lessor, Pacific Northwest Research Institute, (2) lessee–sublessor, the Harris Price Trust and individual owners (appellants), (3) sublessee, KB Jersey Realty Associates.

{¶ 19} On November 17, 1998, appellees purchased Pacific Northwest Research Institute's landowner–lessor interest in the building. On January 20, 1999, appellees began negotiations to purchase appellants' intermediate lessee–sublessor interest in the building. They submitted a letter of intent to appellants in which they offered $75,000 for appellants' interest and advised appellants of their intent to acquire control of the building for redevelopment and their efforts to purchase other buildings along East Fourth Street for similar purposes. The letter of intent was open for acceptance through January 29, 1999.

{¶ 20} On January 26, 1999, Charles Wahl, an employee of KeyBank and trustee for the Harris Price Trust, prepared a memorandum for KeyBank decisionmakers detailing the trust's options with respect to the letter of intent.

He explained that appellants' interest in the building was a leasehold, rather than an ownership, interest, stating, "KeyBank, et al. does not hold any equity interest in either the land or improvements but only has a leasehold estate as a 'sandwich lease' between MRN and KB Jersey." He explained further that when the property was last appraised in 1988, the value of appellants' leasehold interest was $25,000. Wahl also sent a letter to appellants advising them of appellees' intent to purchase their interest in the building.

{¶ 21} Appellants did not respond to appellees' letter of intent until December 1999, when they demanded $85,000 for their interest. The negotiations ultimately terminated without a valid, binding purchase agreement. Instead, appellees continued to satisfy their obligations to appellants as sublessee under the sublease. It was undisputed that appellees paid appellants all rents and other sums that became due thereunder.

{¶ 22} Appellees then turned their attention to purchasing the interest of the sublessee, KB Jersey Realty. In October 2000, appellees paid KB Jersey Realty $205,000 for its sublessee interest under the sublease. Thus, as of October 2000, appellees had acquired the interest of the landowner–lessor and the interest of the sublessee in the building.

{¶ 23} As appellants were both lessee and sublessor, they had an obligation to pay appellees quarterly rent in the amount of $1,500 under the ground lease and the right to receive quarterly rent in the amount of $2,500

under the terms of the sublease. Accordingly, appellees offered to make a single payment to "net out" appellants' rental obligations and pay appellants $1,000 on a quarterly basis under the terms of the sublease. Developer Maron and Trustee Wahl agreed to "net out" the payments and agreed that appellee 2063 would pay the quarterly rent as scheduled. Appellants accepted this proposal and thereafter collected $1,000 until the expiration of the sublease.

{¶ 24} Maron testified that he and Wahl also understood and orally agreed that at the end of appellants' lease term, appellees would own the building. With this understanding, Maron invested over $5 million dollars to develop the McCrory and neighboring buildings.

{¶ 25} Appellants were aware of the renovations to the building and the improvements occurring on East Fourth Street. They did not object to the improvements and did not contribute anything toward the improvements.

{¶ 26} In January 2005, Michael Gillespie assumed Wahl's position with KeyBank. On behalf of the trust, he argued that appellants and appellees were tenants in common of the building because appellees had not tendered $100 between February 14, 2005, and February 28, 2005, to purchase appellants' interest in the property, as required by the sublease. Maron's lawyer tendered $100 to appellants on March 24, 2005, but appellants refused to accept it. This lawsuit followed.

### III. Appellants' Motion for Partial Summary Judgment

{¶ 27} In their motion for partial summary judgment, appellants argued that appellees had failed to exercise their option under the sublease to purchase appellants' interest in the building and that appellants were therefore tenants in common with appellees, as set forth in the ground lease, entitled to their share of ownership and earnings from the property. Appellants further argued that appellees were not entitled to equitable relief from their failure to exercise the option.

{¶ 28} The trial court denied appellants' motion, finding that genuine issues of material fact "preclude the court granting plaintiffs' motion for partial summary judgment." In their first assignment of error, appellants contend that the trial court erred in denying their motion for partial summary judgment.

{¶ 29} In *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 156, 642 N.E.2d 615, the Ohio Supreme Court held that "any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental* further held that when summary judgment is erroneously denied on an issue of law, an ensuing trial does not render the error harmless, and the

ruling is reviewable.   Id.

{¶ 30} Here, in ruling on appellants' motion for partial summary judgment, the trial court agreed with appellants that appellees had not exercised their option to purchase appellants' interest in accord with the requirements of the sublease.   The court also found, however, that although equity might relieve appellees of their failure to exercise their option, there were issues of fact regarding that issue such that the trial court could not grant summary judgment to appellants.   The matter proceeded to trial, and both parties presented evidence on the issue whether appellee 2063 was entitled to equitable relief.   After considering all the evidence and the parties' posttrial briefs, the trial court determined that 2063 was entitled to equitable relief and, therefore, was the sole owner of the building.

{¶ 31} Because the trial court determined that there were genuine issues of material fact regarding whether appellees were entitled to equitable relief, and those issues were resolved at trial in favor of 2063, any error in denying appellants' motion for partial summary judgment was rendered moot in accord with *Continental*.

{¶ 32} We are not persuaded by appellants' contention that the trial court's decision that equitable principles might apply was based on a question of law and, accordingly, the harmless error principle set forth in *Continental* does not apply.   A trial court's decision to apply equitable principles in a given

case is discretionary and dependent upon the facts of the case. The trial court specifically recognized that whether equitable principles applied in this case depended upon disputed facts to be further developed at trial. Despite appellants' argument to the contrary, the trial court's denial of their motion for partial summary judgment was based upon issues of fact, not a question of law, and therefore, the principle of harmless error set forth in *Continental* applies.

{¶ 33} Appellants' first assignment of error is overruled.

### IV. Appellees' Motion to Amend the Pleadings

{¶ 34} In their second assignment of error, appellants contend that the trial court erred in granting 2063's oral motion on the day of trial to amend its pleadings to add an affirmative claim for equitable relief. Appellants contend that (1) the motion was untimely, given the state of the litigation, (2) the motion was made in bad faith, (3) 2063 offered no facts to establish a prima facie claim for equitable relief, (4) 2063 did not articulate a reason for failing to timely assert its equitable claim, and (5) appellants were prejudiced by the late amendment of the pleadings.

{¶ 35} The decision to grant leave to amend pleadings rests with the sound discretion of a trial court. *Csejpes v. Cleveland Catholic Diocese* (1996), 109 Ohio App.3d 533, 539, 672 N.E.2d 724, citing *Wilmington Steel Prod., Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 573 N.E.2d 622.

Therefore, an appellate court will not reverse a trial court's decision absent an abuse of discretion. Abuse of discretion means the trial court's decision was unreasonable, arbitrary, or unconscionable. Id. We find no abuse of discretion here.

{¶ 36} Despite appellants' representations to the contrary, the record indicates that they were aware of appellees' claim for equitable relief years before trial and prior to the initiation of any discovery. Appellees MRN and MFG asserted a claim for equitable relief in their initial responsive pleading to appellants' complaint filed on May 8, 2006. Thereafter, appellants conducted extensive discovery on the claim for equitable relief, including propounding written discovery that focused upon the claim and cross-examining Maron in deposition regarding the claim.

{¶ 37} At the close of discovery, all parties filed motions for summary judgment. In their motion, appellees MRN, MFG and 2063 asserted an argument entitled "Equity Demands that the Plaintiffs' Claim of an Ownership Interest in the McCrory Building Be Denied." In their opposition to appellees' motion for summary judgment, appellants argued that in light of the discovery that had already taken place, appellees were not entitled to equitable relief. Thus, it is clear that appellants were aware of appellees' claim for equitable relief well before 2063 moved to amend its pleadings. Appellee 2063's affirmative claim for equitable relief was notdifferent from the

claim that had been previously asserted by MRN and MFG and extensively litigated with respect to all appellees. It was based upon identical facts, identical arguments, and identical legal theories. Thus, contrary to their assertions, we find no unfair surprise to appellants resulting from 2063's amendment to its pleadings.

{¶ 38} Furthermore, it is apparent that appellees presented a prima facie claim for equitable relief in their motion for summary judgment. Although the court denied all parties' motions, it ruled that equitable relief might be available to relieve appellees of their failure to exercise the option if (1) the failure was the result of accident, fraud, surprise, or honest mistake, (2) Keybank had not suffered any prejudice as a result, or (3) the possible forfeiture of the improvements to the building demanded equitable relief. As explained below, these are the elements of a claim for equitable relief where a lessee fails to timely exercise an option to purchase or renew.

{¶ 39} Finally, we disagree with appellants' assertion that they were prejudiced because they had to prepare for trial a third time. Although the issue of equitable relief had been an issue in the case from the early onset of the litigation, it was appellants who requested additional time to conduct discovery, necessitating a new trial date.

{¶ 40} Civ.R. 15(A) favors a liberal policy when the trial judge is confronted with a motion to amend a pleading beyond the time limits that such

amendments are automatically allowed. It states that "[l]eave of court shall be freely given when justice so requires." The Ohio Supreme Court has noted that "[t]he rule expresses a liberal policy toward the allowance of amendments * * * [and] was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hall v. Bunn* (1984), 11 Ohio St.3d 118, 121, 464 N.E.2d 516.

{¶ 41} In light of the liberal policy toward amendments, and because the issue of equitable relief had been at the heart of the case from its inception and appellants were not prejudiced by the amendment, we hold that the trial court did not abuse its discretion in granting 2063's oral motion to amend its pleadings on the day of trial.

{¶ 42} Appellants' second assignment of error is overruled.

## V. The Trial Court's Finding that Appellees were Entitled to Equitable Relief

{¶ 43} After considering the evidence presented at trial and considering the parties' posttrial briefs, the trial court concluded that appellees were entitled to equitable relief from their failure to timely exercise their option to purchase appellants' interest under the sublease and were, therefore, the sole owners of the building. In their third assignment of error, appellants contend that the trial court's finding that appellees were entitled to equitable relief

was in error.

{¶ 44} We review a trial court's exercise of its equity jurisdiction for an abuse of discretion. *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 274-275, 473 N.E.2d 798. The court's action will not constitute an abuse of discretion unless it was arbitrary, unreasonable, or unconscionable. Id.

{¶ 45} The fundamental question presented by appellants' arguments is whether the record and applicable law establishes an appropriate case for equitable relief. In granting equitable relief to appellees, the trial court relied on *Ward v. Washington Dist., Inc.* (1980), 67 Ohio App.2d 49, 425 N.E.2d 420, in which the Sixth District considered whether equity would relieve a tenant of the consequences of its failure to timely exercise its option to renew its lease. Due to an apparent clerical error, the tenant gave late notice of its intent to renew. In seeking enforcement of the renewal option under the court's equity jurisdiction, the tenants argued that their late renewal was the result of an "honest mistake" (which the lessor conceded) and that termination of the lease would cause them to lose approximately $75,000 in improvements and fixtures on the property. Id. at 52.

{¶ 46} The Sixth District noted that "[t]he well-settled rule is that unless the delay in renewing is so great as to be inexcusable, a failure to renew within the specified time will not preclude equitable relief." Id. at 53. Further, the court noted that "[e]quity will relieve a lessee from the consequences of a

failure to give notice at the time, or in the form and manner, required as a condition precedent to the renewal of a lease, where such failure results from accident, fraud, surprise or honest mistake, and has not prejudiced the lessor." Id. The court further noted that even in the absence of an honest mistake by the lessee, equitable relief should not be denied where the lessee has made valuable improvements to the property, providing that the lessor would not be prejudiced. Id. Accordingly, the Sixth District held in *Ward* that equitable relief should have been granted to the lessee.

{¶ 47} Appellants contend that *Ward* is not applicable to this case, however, because it involved an option to renew a lease, whereas appellees failed to timely exercise their option to *purchase* under the lease. We do not find the distinction dispositive.

{¶ 48} In *Benton v. Tecumseh Corrugated Box Co.* (Oct. 25, 1985), 6th Dist. No. WD-85-9, the court considered facts involving a lessee's failure to properly exercise an option to purchase and relied upon *Ward* to determine that equitable relief was proper. In *Benton*, the lessee failed to timely exercise his option to purchase due to a miscommunication between him and his attorney; both thought the other was going to issue the written notice. As a result, the notice was 14 days late and the landlord–owner refused to sell the property.

{¶ 49} In considering whether the trial court had abused its discretion in

awarding equitable relief to the lessee, the court noted that the *Benton* case was similar to *Ward* in that the failure to renew the lease resulted from an honest mistake, and a failure to invoke equity jurisdiction would have caused the optionee to forfeit valuable improvements to the land and the lessor–owner to receive a sizable windfall. The *Benton* court noted that its case was also similar to *Ward* in that the lessor–owner had not changed its position in reliance on the late notice and would not be prejudiced by enforcement of the option.

{¶ 50} This court relied upon the same equitable principles in *Vivi Retail, Inc. v. E&A N.E. Ltd. Partnership*, 8th Dist. No. 90527, 2008-Ohio-4705, to preclude the eviction of a tenant who had failed to timely exercise its option to renew its lease. Relying on *Ward*, this court explained:

{¶ 51} "Even though a lease may be clear and unambiguous, equitable relief may still be granted to relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner, required as a condition precent to the renewal of the lease, where (1) such failure results from accident, fraud, surprise, or honest mistake, and (2) has not prejudiced the lessor.

{¶ 52} "Here, the trial court appropriately found that [the lessee] made an honest mistake. [The lessee's owner] testified that he owns many stores and simply did not remember the exact renewal date for the Buckeye Plaza

location." Id. at ¶ 20-21.

{¶ 53} We hold that the equitable principles announced in *Ward* and *Benton* and followed by this court in *Vivi Retail* are applicable to this case. Moreover, contrary to appellants' arguments, we find that the evidence presented at trial demonstrated that appellees' failure to timely exercise its option under the sublease resulted from an honest mistake and, further, that appellants were not prejudiced as a result of the delay.

{¶ 54} It was undisputed that appellees acquired the landowner–lessee and sublessee interests in the building under the ground lease and sublease. Maron testified that based upon appellees' ownership position and his conversations with Wahl, he believed that 2063 would own the premises outright after satisfying all the rental payments owed to appellants under the sublease.

{¶ 55} Wahl likewise believed that appellants had "only * * * a leasehold estate" in the building. Although he testified that he did not recall a conversation as that described by Maron, he admitted that he described appellants' interest as a leasehold and further conceded there was no reason that he would have described their interest any differently to Maron.

{¶ 56} Maron's actions in this case demonstrate his belief that 2063 would own the building after payment of all rental payments to appellants. Common sense dictates that Maron would not have invested millions of dollars

to renovate and transform the building into apartments had he known that appellants had any remaining ownership interest following the expiration of their leasehold interest. Moreover, Maron's substantial investment necessitates the obvious conclusion that had he known he was required to exercise a specific option to retain or obtain complete ownership of the building, he would have done so. As the trial court found, "it is implausible to suggest that [appellees] would have ignored the language of the option if they did not believe that the Trust's interest would be extinguished after the expiration of the sublease."

{¶ 57} Having concluded that appellees' failure to timely exercise its option was the result of an honest mistake, we next consider whether appellants were prejudiced by appellees' delay in exercising its option. We find that they were not, as there was no evidence whatsoever that they changed their position in any way between February 28, 2005, when the option expired, and March 24, 2005, when appellees notified Wahl of their intent to purchase appellants' interest. The evidence presented at trial established that in this short period of time, appellants did not invest any money, did not incur any expense, and did not obtain a mortgage on the building. In fact, even after the lease term expired, KeyBank issued a rental invoice to appellees for rent due under the ground lease. In short, appellants did not change their position at all in reliance on the late notice; they just maintained the status

quo.

{¶ 58} Because appellees' failure to timely exercise their option was the result of an honest mistake and appellants were not prejudiced in any way by the delay, the trial court appropriately found that appellees were entitled to equitable relief from the provision of the sublease requiring notice by February 28, 2005.

{¶ 59} Moreover, even in the absence of an honest mistake by appellees, equitable relief is still appropriate in this case to prevent forfeiture of the millions of dollars of improvements that appellees made to the building. The evidence at trial demonstrated that appellees invested over $1,500,000 in the building. In contrast, appellants did nothing with the property. They made no plan regarding the building and spent no money. Appellees put forth all the effort and investment, and it would be inequitable to allow appellants to reap the benefit of appellees' substantial investment. As the trial court found, "it would be inequitable to allow the Trust to reap the benefits of the improvements to the McCrory building, and revitalization of the East Fourth Street neighborhood, especially given that their position has not changed."

{¶ 60} Appellants' third assignment of error is therefore overruled.

## VI. Statute of Frauds

{¶ 61} Last, appellants argue that the trial court erred in concluding that the statute of frauds, R.C. 1335.04 et seq., which requires that agreements

concerning the transfer of real estate be in writing, did not apply to this case. Specifically, appellants contend that the trial court committed reversible error by considering Maron's testimony that he and Wahl had an oral agreement that upon conclusion of payment of the rental stream, appellees would own the building. Appellants contend that the trial court used this testimony, in violation of the statute of frauds, to find an enforceable verbal agreement between Maron and Wahl regarding ownership of the building.

{¶ 62} But the trial court did not do so. In its judgment entry, the court specifically held that "[b]y taking into account this evidence, the court is not using the agreement to prove ownership of the McCrory Building as a matter of law. More simply, the agreement does not, and cannot transfer ownership. However, the oral agreement is competent evidence the court may use to determine whether the [appellees'] failure to exercise their option was the result of an honest mistake because it provides some rationale as to why the defendants never properly exercised their option." Thus, it is apparent that the court considered the oral agreement as one of the bases for appellees' claim for equitable relief, and not to prove ownership of the building.

{¶ 63} Moreover, even if the trial court had improperly considered Maron's testimony as evidence of an oral agreement to transfer ownership of the McCrory building, "'[e]quity will, in proper cases, grant specific performance of an oral contract within the statute [of frauds] if by successfully

invoking the defense of the statute one of the parties to the contract would thus be enabled to defraud the other party, or to unjustly enrich himself at the other's expense.'" *Wallace v. Wallace* (June 3, 1983), 7th Dist. Nos. 82-C-7 and 82-C-8, quoting 25 Ohio Jurisprudence 2d 339, Statute of Frauds, Section 239. "[T]he making of valuable permanent improvements on the land by a vendee or lessee, in pursuance of the agreement and with the knowledge of the other party, is always considered to be the strongest and most unequivocal act of part performance by which a verbal contract to sell and convey, or to lease, is taken out of the statute of frauds." Id.

{¶ 64} Maron testified that in reliance upon his discussions with Wahl that 2063 would own the building at the end of appellants' leasehold estate, he made significant, valuable improvements to the building with appellants' knowledge. Therefore, even if the trial court had improperly concluded that the agreement between Maron and Wahl was an oral modification to either the ground lease or the sublease, equity would demand enforcement of the oral agreement, outside the statute of frauds, to prevent appellants' unjust enrichment at appellees' expense.

{¶ 65} Appellants' fourth assignment of error is therefore overruled.

Judgment affirmed.

BOYLE, P.J., and SWEENEY, J., concur.

_____