[Cite as *Kappa HQ & CC, Inc. v. Norman*, 2012-Ohio-4816.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97892

---

## KAPPA HQ & CC, INC.

PLAINTIFF-APPELLEE

vs.

## CARL P. NORMAN, ET AL.

DEFENDANTS-APPELLANTS

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-758341

**BEFORE:** Keough, J., Rocco, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** October 18, 2012

**ATTORNEY FOR APPELLANTS**

Terence E. Copeland
3725 Edgehill Drive
Cleveland, OH 44121

**ATTORNEYS FOR APPELLEE**

Gary Cook
Michael Aten
The Leader Building
526 Superior Avenue, East
Suite 455
Cleveland, OH 44114

Donald R. Murphy
12800 Shaker Blvd.
Cleveland, OH 44120

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendants-appellants, Carl P. Norman and the heirs of the Estate of Clem Norman[1] (collectively "the Normans" or "lessors"), appeal the trial court's decision granting judgment in favor of plaintiff-appellee, Kappa HQ & CC, Inc. ("Kappa" or "lessee"). For the reasons that follow, we affirm.

{¶2} This case arises from a Lease Purchase Agreement ("Agreement") entered into on April 1, 2008, between Carl Norman and Clem Norman, as lessors, and Kappa, as lessees, for the lease and the option to purchase commercial property located at 119 Shaker Boulevard in Cleveland, Ohio. The Agreement provided that Kappa would lease the building beginning April 1, 2008, and expiring on March 31, 2011, at a monthly rental rate of $3900. Additionally, the Agreement provided for an option to purchase the property either during or at the expiration of the lease. Paragraph 4 of the Agreement contained the option to purchase:

> 4. Purchase of Premises
>
> In consideration of the sum of Twenty Thousand Dollars ($20,000.00) to be paid by Lessee to Lessors at the commencement of the Lease and One Hundred Forty-Six Thousand Five Hundred Eighty Dollars ($146,580.00) to be paid by Lessee to Lessors at the expiration of the Lease, provided Lessee is not in default of any of the provision [sic] of this Agreement, Lessors shall convey the premises to Lessee or its nominee by Warranty Deed, free of all liens and encumbrances, except restrictions and easements of record,

---

[1] Donna P. Norman, Tammra Norman, Tisha Norman, and Torinae Norman.

and taxes and assessments not yet due and owing and with title guaranteed to the Lessee by a title company acceptable to Lessee. Should the Lessee choose to purchase the property prior to the expiration of the lease term, the sales price will be determined by the following formula: Two Hundred and Sixty Thousand Dollars ($260,000.00) minus the initial payment and Two Thousand Five Hundred and Ninety-Five Dollars ($2,595.00) multiplied by the number of rental payments made.

{¶3} The Agreement also set forth the responsibilities of the parties regarding maintenance and upkeep of the premises. Pursuant to Section 7, Kappa was required to provide and pay for all cleaning, janitorial services, repairs, ground maintenance, and security of the premises. The Normans were required to pay the mortgage, insurance, and taxes on the premises. At trial, it was revealed that Kappa received $2750 in monthly rent and another $250 a month for the rental of the parking lot. Additionally, Kappa could have rented the first floor of the property to collect additional rental income.

{¶4} Kappa paid the Normans the initial down-payment of $20,000 at the commencement of the lease. Thereafter, Kappa made regular monthly lease payments of $3900 as provided in the Agreement. Additionally, during the entire term of the lease, Kappa expended over $26,000 in maintenance and upkeep expenses.

{¶5} On March 11, 2011, approximately three weeks prior to the expiration of the lease, Kappa submitted a proposed Purchase Agreement to the Normans for the purchase of the premises. This agreement proposed that the Normans would finance Kappa's purchase of the premises. The Normans, in a letter dated March 18, declined the proposed purchase agreement, instead deciding to "hold to the original Lease Purchase Agreement signed in April 2008." The Normans proposed in the letter that "unless

otherwise stated in that Agreement, we propose that we split 50/50 the cost of the Title Examination fee, the cost for a policy of Title Insurance, the Escrow Fee, and the Conveyance Fee."   The letter also contained the following paragraph:

> The existing Kappa Lease expires on March 31, 2011.  If for any reason the title has not transferred by April 1, 2011, your status will be considered as a month to month tenant with rent equal to the lease for the second floor for Dr. James Greene and Dr. Carl Norman ($2750 per month due on the first of every month)[.] Furthermore, during the interim time between April 1st and the transfer of title, any rents paid by tenants in the building and any parking fees should be made payable to Carl P. Norman and the Estate of Clem B. Norman.

> All possible liens and encumbrances have been eliminated.  As far as I know, the building is available for title transfer upon the timely receipt of funds required to close this transaction.

{¶6} Thereafter, on March 24, 2011, Ray Lowe, on behalf of Kappa, sent a letter to the Normans advising them that Kappa would exercise its option to purchase the premises.   He acknowledged that until the transfer of title, the terms of the lease would continue on a month-to-month basis.

{¶7} On March 31, 2011, Kappa did not pay the Normans $146,580 pursuant to Section 4 of the Agreement, and title of the property was not transferred.   At trial, Dr. James Greene, a tenant of the subject property and member of Kappa, testified that he had a discussion with Carl Norman on March 31, 2011, where Carl told him that he needed "today" a letter of intent from the bank or the money for the purchase of the premises. Carl told Greene that if Kappa did not come up with a letter of intent, "you're in breach of contract." During this conversation, Carl also stated that he had expended "a lot of money to clear up all [the] liens [on the property] by today."   Greene testified that Carl told him

that "he had done all this, borrowed money, did what whatever [sic] he needed to do to clean the liens up, because the building was ready to go." However, evidence was presented that the liens, in fact, had not been satisfied and still existed on the premises.

{¶8} Greene further testified that on April 1, 2011, he received a "3-day notice"[2] from the Normans' attorney indicating that the final payment to complete the purchase or a letter of intent from the bank was due on March 31 pursuant to the Agreement, and thus was past due. The notice also referenced Paragraph 12 of the Agreement, which allowed Kappa 30 days to cure the defect — i.e., make the final payment of $146,580 or provide the Normans with a letter of intent from the bank.

{¶9} Thereafter, correspondences were exchanged between the parties' attorneys, essentially disputing whether the Normans agreed to extend the time frame of when Kappa was required to purchase the premises. The Normans maintained that no extension of time, other than the cure period, was granted to Kappa to purchase the property under the Agreement. The Normans also maintained that as early as May 16, 2011, Kappa was put on notice that if it wanted to purchase the premises, the purchase price increased.

{¶10} On June 10, 2011, Kappa informed the Normans that it had secured financing with Dollar Bank for the purchase of the property and that payment of the $146,580 would be submitted at closing. Nevertheless, the sale and transfer of the

---

[2]Although the notice only afforded Kappa three days to cure the defect, the parties agree that 30 days was the correct cure period under Paragraph 12 of the Agreement.

property did not occur and no money was placed in escrow.

{¶11} On June 24, 2011, Kappa filed suit against the Normans for specific performance under the Agreement and injunctive relief. Following a bench trial, the trial court entered judgment in favor of Kappa. In its written decision with findings of fact and conclusions of the law, the trial court found that the Normans' March 18 letter and subsequent actions evidenced that they were willing and agreed to extend the time for a reasonable period beyond March 31 for final payment, and that the Normans acted unreasonably in notifying Kappa of their unwillingness to allow any additional time to purchase the premises under the Agreement. The trial court concluded that Kappa was entitled to equitable relief of specific performance based on the conduct of the parties, the down payment, improvements, and repairs made by Kappa, and the lack of prejudice to the Normans. The Normans subsequently moved for a new trial, which was denied.

{¶12} The Normans now appeal, contending in their sole assignment that the trial court erred in "failing to enforce the commercial lease containing an option to purchase that required the lessee to exercise its option with full payment of the purchase price by the end of the lease term."[3]

{¶13} We review a trial court's exercise of its equity jurisdiction for an abuse of discretion. *Keybank v. MRN Ltd. Partnership*, 193 Ohio App.3d 424, 2011-Ohio-1934,

---

[3]The notice of appeal indicates that appellants also appealed from the trial court's denial of appellants' motion for a new trial. However, no assignment of error or argument was raised in appellants' merit brief challenging this ruling. Accordingly, this court deems that issue waived. *See* App.R. 12 and 16.

952 N.E.2d 532, ¶ 44 (8th Dist.), citing *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 274-275, 473 N.E.2d 798 (1984).  The court's action will not constitute an abuse of discretion unless it was arbitrary, unreasonable, or unconscionable.  *Id*.  When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court.  *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990), citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990).

{¶14} Recently, this court held that the equitable principles set forth in *Ward v. Washington Distribs., Inc.*, 67 Ohio App.2d 49, 425 N.E.2d 420 (6th Dist.1980), *Benton v. Tecumseh Corrugated Box Co.*, 6th Dist. No. WD-85-9, 1985 Ohio App. LEXIS 9020 (Oct. 25, 1985), and *Vivi Retail Inc. v. E&A N.E. Ltd. Partnership*, 8th Dist. No. 90527, 2008-Ohio-4705, applied to situations where a party fails to timely exercise its option to purchase under the lease.  *Keybank* at ¶ 53.

> Even though a lease may be clear and unambiguous, equitable relief may still be granted to relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner, required as a condition precedent to [exercise the option to purchase under the lease], where (1) such failure results from accident, fraud, surprise, or honest mistake, and (2) has not prejudiced the lessor.

*Id.* at ¶ 51, quoting *Vivi Retail* at ¶ 20; *see also Ward* at 53-54.

{¶15} It is clear from the record that Kappa failed to timely exercise its option to purchase. It is also clear from the record that Kappa failed to prove that its failure to exercise the option was because of accident, fraud, surprise, or honest mistake. However, this failure is not fatal to Kappa's case.

{¶16} In *Ward*, the court explained that in the absence of accident, fraud, surprise, or honest mistake, equitable relief may still be appropriate when the "lessee has made valuable or substantial improvements to the leased premises." *Ward* at 54. Therefore, "the lessee should not be denied equitable relief from his own neglect or inadvertence if a forfeiture of such improvements would result — provided, there is no prejudice to the landlord." *Ward* at 54, citing *Barr Hotel Co. v. Lloyd MacKeown Buick Co.*, 104 Ohio App. 69, 73-74, 146 N.E.2d 879 (1957).

> Since an option to renew a lease is plainly of great value to commercial tenants, especially in an age of inflation, and is given in exchange for valuable consideration, such a valuable benefit should be protected by equity against a forfeiture where the lessee has faithfully met the rents and all other substantial requirements of the lease through the entire term.

*Id.*, citing *Geo. W. Millar & Co. Inc. v. Wolf Sales & Serv. Corp.*, 65 N.Y. Misc.2d 585, 318 N.Y. Supp.2d 24 (1971). We find that an option to purchase is of equally great value to commercial tenants.

{¶17} The trial court found that Kappa was negligent in its exercise of the option to purchase. However, the trial court found that equitable relief was still warranted based on (1) the conduct of the parties, (2) the down payment and improvements to the premises made by Kappa, (3) the Normans' non-compliance with the terms of Lease Agreement by their failure to pay off all liens, and (4) the lack of prejudice to the Normans. While one of these reasons standing alone may not warrant equitable relief, when the reasons are coupled with the facts and circumstances of this case, they do not render the trial court's decision exercising its equitable jurisdiction unreasonable,

arbitrary, or unconscionable.

{¶18} When construing and interpreting lease provisions, courts apply traditional contract principles. *Vivi Retail*, 8th Dist. No. 90527, 2008-Ohio-4705 at ¶ 30, citing *Myers v. E. Ohio Gas Co.*, 51 Ohio St.2d 121, 125, 364 N.E.2d 1369 (1977). "If the language of a lease is clear and unambiguous, courts must enforce the instrument as written." *Id.*, citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). However, waiver of a contract term can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term. *Id.*, citing *Convenient Food Mart Inc. v. Atwell*, 11th Dist. No. 2003-L-174, 2005-Ohio-704; *see also Snowville Subdivision Joint Venture Phase I v. Home S&L of Youngstown*, 8th Dist. No. 96675, 2012-Ohio-1342.

{¶19} In this case, the trial court found that the conduct of the Normans was inconsistent with their intention to hold Kappa to the time frame of exercising its option to purchase the premises. In the March 18 letter, the Normans proposed additional terms to Kappa, including "splitting the cost of the Title Examination fee, the cost for a policy of Title Insurance, the Escrow Fee, and the Conveyance Fee." Additionally, when Kappa notified the Normans in its March 24 letter that it was exercising its option to purchase the premises and that it would secure bank financing, the letter did not indicate a time when the bank financing would be secured. The trial court found that when the Normans did not ask for clarification, and in light of the additional terms they had added regarding splitting the closing costs, the Normans were prepared to accept a reasonable period of

time beyond March 31 to complete the financing and transfer of property.

{¶20} Moreover, and despite the Normans' assertion in their March 18 letter, the liens on the property were still in existence and not paid off when the lease expired, and they still remained after the cure period had expired. Pursuant to the terms of the Agreement, the premises was to be free and clear of any liens and encumbrances prior to transfer. Evidence was submitted that even at the time of trial, there were still liens on the property. Therefore, the trial court found that Kappa showed by clear and convincing evidence that the Normans failed to perform their duty to clear all liens, which was a duty the lease agreement imposed on them. This finding was reasonable.

{¶21} Additionally, the trial court held that equitable relief was warranted because Kappa made substantial repairs on the property, which normally would be the owner's responsibility, and a made a down payment toward the purchase. Again, this finding was reasonable. Even concluding that Kappa's failure to timely exercise the option to purchase constituted negligence, it was not of sufficient magnitude to warrant a forfeiture of the improvements Kappa had made to the premises. "An optionee '* * * should not be denied equitable relief from his own neglect or inadvertence if a forfeiture of * * * improvements would result — provided there is not prejudice to the landlord." *Benton*, 6th Dist. No. C. A. NO. WD-85-9, 1985 Ohio App. LEXIS 9020, at *7, quoting *Ward*, 67 Ohio App.2d at 54, 425 N.E.2d 420.

{¶22} We agree with the trial court that Kappa's delay in exercising its option to purchase had absolutely no prejudicial effect on the Normans. "The prejudice must arise

from the delay itself." *Vivi Retail*, 8th Dist. No. 90527, 2008-Ohio-4705, at ¶ 22.  In this case, there was no evidence that the Normans suffered any prejudice by Kappa's failure to timely exercise its option to purchase.  The Normans did not present any evidence that another buyer or tenant was interested in either buying or leasing the premises.  In fact, during opening statements at trial, counsel for the Normans stated that "[a]t the time that this transaction was entered it was the intent of Dr. [Carl] Norman to sell the building eventually to the Kappa organization."

**{¶23}**  Accordingly, we find the trial court did not abuse its discretion in granting specific performance under the Lease Agreement and granting judgment in favor of Kappa.  The Normans' assignment of error is overruled.

**{¶24}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

KENNETH A. ROCCO, P.J., and
MARY EILEEN KILBANE, J., CONCUR